Anne M. Patterson, Esq.
RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Attorneys for Defendant
Abbott Laboratories

|  |  |
|---|---|
| STEPHEN P. WENDELL, for himself and as Administrator <u>ad prosequendum</u> of the ESTATE of MAXX WENDELL, deceased and/or successor-in-interest to MAX WENDELL, deceased; and LISA WENDELL, for herself,<br><br>         Plaintiffs,<br><br>    vs.<br><br><br>JOHNSON & JOHNSON; CENTOCOR, INC.; ABBOTT LABORATORIES; SMITHKLINE BEECHAM d/b/a GLAXOSMITHKLINE; TEVA PHARMACEUTICALS USA; GATE PHARMACEUTICALS, a division of TEVA PHARMACEUTICALS, USA; and PAR PHARMACEUTICAL,<br><br>         Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>Case No. 09-cv-3273-JAP-TJB<br><br><br><br><br>Hon. Joel A. Pisano, U.S.D.J.<br><br>Hon. Tonianne J. Bongiovanni, U.S.M.J.<br><br><br>**BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER THIS ACTION** |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

PARTIES ................................................................................................................1

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND...................................................................................2

I.   This Action Is Duplicative Of An Action Pending In The U.S. District Court For The Northern District Of California. ......................................................................2

II.  The California Action Has Progressed Considerably Further Than The New Jersey Action. .......................................................................................5

III. Plaintiffs And Key Non-Party Witnesses Are Located In California .................................6

ARGUMENT ..........................................................................................................8

I.   The Court Should Dismiss This Action Under The Federal Comity Doctrine Because It Is Completely Duplicative Of An Action Pending In Another Federal Court. ............................................................................................8

II.  In The Alternative, The Court Should Transfer This Case To The U. S. District Court for the Northern District of California......................................................11

     A.   Section 1404 Transfers Are Subject To A Case-By-Case, Multi-Factor Examination ...............................................................................11

     B.   All Section 1404 Factors Weigh In Favor Of Transfer To The Northern District Of California ....................................................................12

CONCLUSION......................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*AT&T. v. MCI Commc'ns Corp.,*
  736 F. Supp. 1294 (D.N.J. 1990) ............................................................. 12, 14

*Colorado River Water Conservation
  District v. United States,*
  424 U.S. 800 (1976) ....................................................................... 2, 8

*Cont'l Grain Co. v. The FBL-585,*
  364 U.S. 19 (1960) ........................................................................ 12

*Crosley Corp. v. Hazeltine Corp.,*
  122 F.2d 925 (3d Cir. 1941) ............................................................ 10

*Curtis v. Citibank N.A.,*
  226 F.3d 133 (2d Cir. 2000) ............................................................. 8

*E.E.O.C. v. University of Pennsylvania,*
  850 F.2d 969 (3d Cir. 1988) ......................................................... 8, 9, 10

*In re Amendt,*
  169 F. App'x 93 (3d Cir. 2006) ...................................................... 11, 12

*In re M.C. Products, Inc.,*
  205 F.3d 1351, 1999 WL 1253223
  (9th Cir. 1999) ........................................................................... 10

*ITT Corp. v. Intelnet Intern.,*
  366 F.3d 205 (3d Cir. 2004) ............................................................. 8

*Jumara v. State Farm Ins. Co.,*
  55 F.3d 873 (3d Cir. 1995) ............................................................. 11

*Landmark Fin. Corp. v. Fresenius Med. Care Holdings, Inc.,*
  No. 09-3689, 2010 WL 715454 (D.N.J. Mar. 1, 2010) .................................. 14

*Lawrence v. Xerox Corp.,*
  56 F. Supp. 2d 442 (D.N.J. 1999) ................................................. 12, 13, 14

*Marrakush Soc. v. N.J. State Police,*
  2009 WL 2366132 (D.N.J. July 30, 2009) ............................................... 9

*Maximum Human Performance, Inc.*
    *v. Dymatize Enters,*
    2009 WL 2778104 (D.N.H. Aug. 27, 2009) ................................................................ 9, 10

*Missouri ex rel Nixon v. Prudential*
    *Health Care Plan, Inc.,*
    259 F.3d 949 (8th Cir. 2001) ........................................................................ 8

*Ricoh Co., Ltd. v. Honeywell, Inc.,*
    817 F.Supp. 473 (D.N.J. 1993) ................................................................ 12, 13

*Serlin v. Arthur Andersen & Co.,*
    3 F.3d 221 (7th Cir. 1993) ........................................................................ 8

*Todd Shipyards Corp. v. Cunard Line Ltd.,*
    708 F.Supp. 1440, (D.N.J. 1989) ............................................................ 14

*Torres v. Lucca's Bakery,*
    487 F. Supp. 2d 507 (D.N.J. 2007) .......................................................... 14

*Travelers Indemnity Co. v. E.F. Corp.,*
    1997 WL 135819 (E.D.Pa. Mar. 17, 1997) ............................................. 12

*White v. Williams,*
    179 F. Supp. 2d 405 (D.N.J. 2002) .......................................................... 8

**Statutes**

28 U.S.C. § 1404 ................................................................................................. 2, 11

## PARTIES

Pursuant to Civil Local Rule 10.1, this case involves plaintiffs Stephen P. Wendell and Lisa Wendell, represented by Esther Eva Berezofsky and Kevin Haverty, WILLIAMS, CUKER & BEREZOFSKY, ESQS., Woodland Falls Corporate Center, 210 Lake Drive East, Suite 101, Cherry Hill, New Jersey 08002-1163. The Defendants and their respective principal places of business are:

- Johnson & Johnson, One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933;

- Centocor Ortho Biotech Inc. (incorrectly identified by plaintiffs as Centocor, Inc.), 800/850 Ridgeview Drive, Horsham, Pennsylvania 19044;

- Abbott Laboratories, 100 Abbott Park Road, Abbott Park, Illinois 60064;

- GlaxoSmithKline LLC (sued herein as SmithKline Beecham Corporation d/b/a GlaxoSmithKline) (herein "GSK"), 2711 Centerville Road, Suite 400, Wilmington, New Castle, Delaware 19808;

- Teva Pharmaceuticals USA, Inc., 425 Privet Road, P.O. Box 1005, Horsham, Pennsylvania 19044; and

- Par Pharmaceutical, Inc. (incorrectly identified by plaintiffs as Par Pharmecuticals); One Ram Ridge Road, Spring Valley, New York 10977.

The remaining named party, Gate Pharmaceuticals, is a division of Teva Pharmaceuticals USA, Inc., is not a separate legal entity, and is improperly named as a separate defendant by plaintiffs.

## INTRODUCTION

For the last nine months, plaintiffs have pursued duplicative civil actions in two different federal courts: this Court and the U.S. District Court for the Northern District of California (Judge Claudia Wilken presiding). The same plaintiffs and defendants are involved in each action, and each action arises out of the same event: Mr. Wendell's alleged injuries from his treatment with Defendants' pharmaceutical products. The federal comity doctrine that the

Supreme Court announced in *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), prohibits plaintiffs from maintaining duplicative actions in two different federal courts. Accordingly, as explained in Section I below, the Court should dismiss this action in favor of the action pending before Judge Wilken, which was filed on the same day as this action but which has progressed considerably further. Plaintiffs' refusal to dismiss this action is the result of impermissible forum shopping. Plaintiffs have been testing the waters before Judge Wilken on Defendants' Fed. R. Civ. P. Rule 12 motions to dismiss, and are simply attempting to leave their options open if the Northern District of California action does not proceed to their liking. Plaintiffs have no such right under the federal rules, and the Court should dismiss this duplicative action.

In the alternative, the Court should transfer this action under 28 U.S.C. § 1404(a) to the Northern District of California. As explained in Section II below, the overwhelming weight of the relevant factors favors the Northern District of California: the plaintiffs reside in California, Mr. Wendell's medical diagnosis, treatment, and alleged injuries—the operative events in this action—took place in California, and all the prescribing physicians and hospitals—the key nonparty witnesses—along with their files are located in California. The only contact with New Jersey is the fact that two defendants are allegedly located in this state. Such minimal contact is insufficient to justify maintaining this action in this Court, particularly in light of Judge Wilken's concurrent exercise of jurisdiction over the same matter.

## FACTUAL BACKGROUND

I.      **This Action Is Duplicative Of An Action Pending In The U.S. District Court For The Northern District Of California.**

On July 2, 2009, plaintiffs filed this action in this Court. (D.N.J. Dkt. # 1) On the ***same day***, plaintiffs filed a virtually identical action in California state court (which was subsequently

removed to the U.S. District Court for the Northern District of California). (Complaint filed in Cal. Super. Ct., County of San Francisco ("Cal. Compl."), attached to Patterson Cert. as Ex. 1) The original complaints in both actions involve the *same issues and the same parties*. Both cases allege that Mr. Wendell, the decedent, was diagnosed in 1998 with inflammatory bowel disease ("IBD") and ulcerative colitis ("UC"), and that he was variously prescribed Purinethol® (mercaptopurine), an immunosuppresent, and Remicade® and Humira®, both TNF-α inhibitors, to treat those conditions. (*Compare* Cal. Compl. ¶¶ 59–63, *with* Complaint filed in D.N.J. ("N.J. Compl."), D.N.J. Dkt. #1 ¶ 31–35)  Both complaints allege that Mr. Wendell subsequently developed hepatosplentic T-cell lymphoma in July 2007 and died in December 2007. (*Compare* Cal. Compl. ¶¶ 64–65, *with* N.J. Compl. ¶¶ 36–37)  Both allege that Mr. Wendell's injuries were caused by the drugs individually or in combination. (*Compare* Cal. Compl. ¶ 57, *with* N.J. Compl. ¶ 29)  Both identify the same parties: plaintiffs Stephen and Lisa Wendell, the parents and administrators of the estate; Defendants SmithKline Beecham d/b/a GlaxoSmithKline (GSK), Teva Pharmaceuticals USA, Inc. (of which Gate Pharmaceuticals is a division and not a separate legal entity), Par Pharmaceutical, Inc., Mylan, Inc. (served as Mylan Laboratories, Inc.), Boehringer Ingelheim Corporation, Boehringer Ingelheim Roxane, Inc., and Roxane Laboratories (together, the "mercaptopurine defendants"); Defendants Johnson & Johnson and Centocor Ortho Biotech Inc. (served as Centocor, Inc.) (together, "the Remicade® defendants"); and Defendant Abbott Laboratories, manufacturer of Humira®. (*Compare* Cal. Compl. ¶¶ 11–29, *with* N.J. Compl. ¶¶ 1–15)  And both complaints assert similar causes of action against all Defendants:  strict liability, negligence, breach of express warranty, breach of implied warranty, wrongful death, fraud, deceptive trade practices, and punitive damages. (*Compare* Cal. Compl. ¶¶ 71–143, *with* D.N.J. Compl. ¶¶ 38–84)

The amended complaints in both actions, like the original complaints, are likewise duplicative. (*Compare* First Amended Complaint and Jury Demand filed in N.D. Cal. ("Cal. Am. Compl."), attached to Patterson Cert. as Ex. 2; *with* Amended Complaint and Jury Demand filed in D.N.J. ("N.J. Am. Compl."), Dkt. # 15)  The parties in both actions remain the same. Plaintiffs have dismissed Defendants Boehringer Ingelheim, Roxane Labs, and Mylan Labs from both the New Jersey and California actions. (N.D. Cal. Dkt. ## 66, 110; D.N.J. Dkt. ## 11, 17). And the operative factual and legal issues remain the same. (*Compare* Cal. Am. Compl. ¶¶ 33–60, *with* N.J. Am. Compl. ¶¶ 22–44)  Both amended complaints dropped the majority of counts against Abbott and instead assert causes of action only for strict liability and negligence. (*Compare* Cal. Am. Compl. ¶¶ 131–144, *with* N.J. Am. Compl. ¶¶ 45–64)  The only distinction is that plaintiffs have not yet narrowed the causes of action against the remaining defendants in the California action to counts for strict liability and negligence as they have in the New Jersey action.[1]

---

[1]   Plaintiffs have indicated that they intend to drop the additional counts from the California action, but offered to do so only after Abbott files its answer. (3/1/10 Letter from K. Haverty to W. Hansen, attached to Patterson Cert. as Ex. 5)  Defendants have refused this offer because it would be more efficient for the parties and the court if plaintiffs amend their complaint now, rather than wait until Abbott's Rule 12(b)(6) challenge to the amended complaint has been resolved.  Judge Wilken had earlier concluded that plaintiffs' original complaint insufficiently stated a claim against Abbott on those counts. (*See* N.D. Cal. Docket, attached to Patterson Cert. as Ex. 4, at Dkt. # 98)  Because plaintiffs have asserted similarly deficient allegations against the other defendants, the non-Abbott defendants have filed a Fed. R. Civ. P. 12(c) motion to dismiss those counts on the same grounds upon which Abbott prevailed. (*See* N.D. Cal. Dkt. # 115)

## II.   The California Action Has Progressed Considerably Further Than The New Jersey Action.

Plaintiffs served the California action on several of the defendants in August and September 2009. (*See* Super Ct. Cal., County of San Francisco Docket ("Cal. St. Ct. Dkt."), attached to Patterson Cert. as Ex. 3)  Defendants Teva/Gate, Centocor, GSK, and Mylan filed answers to the complaint in state court. (*See id.*)  With the consent of all served Defendants, Abbott removed the action to the U.S. District Court for the Northern District of California on September 4, 2009. (*See* N.D. Cal. Docket, attached to Patterson Cert. as Ex. 4, at Dkt. # 1).  On September 28, 2009, Abbott moved to dismiss all counts under Fed. R. Civ. P. 9 and 12(b)(6). (*Id.* # 39)  The court granted the motion in part and dismissed all counts against Abbott. (*Id.* # 98)  Plaintiffs amended the complaint only as to Abbott, dropping the ten original counts and stating only two counts for negligence and strict liability. (Cal. Am. Compl. ¶¶ 131–44)  Abbott moved to dismiss the amended complaint on March 4, 2010. (N.D. Cal. Dkt. # 105)  That motion has been completely briefed and is pending before the court.  The other defendants have filed a Fed. R. Civ. P. 12(c) motion to dismiss the ten counts against them that the court has earlier dismissed as to Abbott. (*Id.* # 115)  That motion is likewise pending.  Defendants served their initial disclosures under Fed. R. Civ. P. 26(a)(1) on December 10, the plaintiffs did the same on December 14, and the initial case management conference is set for June 3, 2010 (*id.* # 117).  Under its local rules, the California court appointed a mediator on March 26, 2010, and the parties held an initial conference with the mediator on April 9, 2010.

In contrast to the California action, the action pending in this Court has seen no significant activity.  Plaintiffs did not even start serving Defendants in the New Jersey action until October 26, 2009—nearly four months after filing the complaint. (D.N.J. Dkt. ## 1, 2)  During the Fed. R. Civ. P. 26(f) conference for the California action, Defendants requested that

5

the plaintiffs dismiss one of the two duplicative matters, and plaintiffs indicated that they would make a determination by December 10, 2009. Plaintiffs subsequently declined to dismiss one of the matters. In the meantime, plaintiffs agreed to extend the time for Defendants to answer or otherwise respond to the New Jersey complaint on November 13, 2009; again on December 21, 2009; and yet again on January 26, 2010. (*Id.* ## 10, 12, 14)   In their December letter to the court, plaintiffs indicated that they consented to the extension "pending a decision by the court in the California matter on Abbott Laboratories' motion to dismiss plaintiff's complaint." (*Id.* # 12) Yet plaintiffs did not dismiss either of the actions after the California court ruled on Abbott's motion to dismiss.

On March 10, 2010, Defendants renewed their request that plaintiffs dismiss the duplicative New Jersey action by March 17, 2010. (*See* 3/10/10 Letter from W. Hanssen to K. Haverty, attached to Patterson Cert. as Ex. 7) Plaintiffs never formally responded to Defendants' letter, but instead served an amended complaint in the New Jersey action on March 17, 2010. (D.N.J. Dkt. #15) Defendants subsequently obtained an extension from the court to file a motion to dismiss or transfer the New Jersey action on March 30, 2010. (*Id.* #19)

## III.   Plaintiffs And Key Non-Party Witnesses Are Located In California

As plaintiffs have admitted: "*All* events giving rise to this cause of action occurred in the County of San Francisco, State of California." (Cal. Am. Compl. ¶ 25 (emphasis added).[2] Wendell was diagnosed with ulcerative colitis and irritable bowel disease, treated for those conditions, developed hepatosplenic T-cell lymphoma, and later treated for lymphoma all in the

---

[2]   (*But cf.* N.J. Am. Compl. ¶ 10 ("many of the acts and/or omissions complained of occurred in the State and District of New Jersey"))

state of California. (*See id.* ¶¶ 1–60)  In addition, plaintiffs and key non-party witnesses are located in California.  Plaintiffs Steven and Lisa Wendell, the parents of Mr. Wendell and the administrators of his estate, are residents of California. (*Id.* ¶ 1; N.J. Am. Compl. ¶ 2)  Forty-two of the fourty-four treating physicians and hospitals identified in plaintiffs' initial disclosures are located in California. (*See* Pls.' Initial Disclosures in N.D. Cal., attached to Patterson Cert. as Ex. 8)  The two remaining, non-California physicians are both oncologists, which would not have prescribed the drugs at issue. (*See id.*)  Neither of them is located in New Jersey.

The only alleged contact with New Jersey is the fact that two defendants Johnson & Johnson and Par Pharmaceutical, are allegedly located here.[3]  (N.J. Am. Compl. ¶¶ 15, 21)  The other defendants are incorporated or headquartered in several different states:

- Centocor Othor Biotech Inc. (served as Centocor, Inc.) is a Pennsylvania corporation with its principal place of business in Pennsylvania. (*Id.* ¶ 16)

- Abbott Laboratories is an Illinois corporation with its principal place of business in Illinois. (*Id.* ¶ 17)

- SmithKline Beecham Corporation d/b/a GlaxoSmithKline is allegedly a Pennsylvania Corporation with its principal place of business in Pennsylvania.[4] (*Id.* ¶ 18)

- Teva Pharmaceuticals USA, Inc. is a Delaware corporation with its principal place of business in Pennsylvania. (*See id.* ¶ 19)

- Gate Pharmaceuticals is a division of Teva Pharmaceuticals USA, Inc., which is a Delaware Corporation with its principal place of business in Pennsylvania. (*See id.* ¶ 20)  Gate Pharmaceuticals is not a separate legal entity. (*Id.*)

---

[3]   Although defendant Johnson & Johnson is a resident of the state of New Jersey, it is a named defendant only because of the alleged actions of its subsidiary, Defendant Centocor Ortho Biotech Inc., which is not a New Jersey resident.

[4]   GSK (sued herein as SmithKline Beecham Corporation d/b/a GlaxoSmithKline) is currently a Delaware LLC with its principal place of business in Delaware.

Accordingly, this case has almost no connection with New Jersey.

## ARGUMENT

**I.**   **The Court Should Dismiss This Action Under The Federal Comity Doctrine Because It Is Completely Duplicative Of An Action Pending In Another Federal Court.**

The Court should dismiss this duplicative action under the federal comity doctrine. Under that doctrine, as articulated by the Supreme Court, "the general principle is to avoid duplicative litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The Third Circuit has concluded that "the *Colorado River* doctrine" authorizes a federal court "to refrain from exercising its jurisdiction" when the litigation would be "duplicative" of a "concurrent" federal proceeding. *ITT Corp. v. Intelnet Intern.*, 366 F.3d 205, 210 n.6 (3d Cir. 2004). Other circuit courts have likewise concluded that plaintiffs simply are not entitled to maintain duplicative actions in two different federal courts. *See, e.g., Missouri ex rel Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 954 (8th Cir. 2001) ("Plaintiffs may not pursue multiple federal suits against the same party involving the same controversy at the same time."); *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) ("a federal suit may be dismissed for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court" (internal citations omitted)); *Curtis v. Citibank N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("as part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit.").

This Court has likewise concluded that "it is within this Court's discretion to dismiss a claim that is duplicative of another in a different federal court." *White v. Williams*, 179 F. Supp. 2d 405, 423 (D.N.J. 2002) (Pisano, J.) "The purpose of the rule is to conserve judicial resources, avoid piecemeal litigation, eliminate the risk of inconsistent adjudications, and to 'promote

comity among federal courts of equal rank.'" *Id.* (quoting *E.E.O.C. v. Univ. of Penn.*, 850 F.2d 969, 971 (3d Cir. 1988)). As another court in this district explained:

> Where the plaintiff commences more than one action by submitting for filing his pleadings that are identical to each other in all substantive respects, the so-commenced actions are facially duplicative and offend the notion of judicial economy and are subject to dismissal. The power of a federal court to prevent duplicative litigation is intended to foster judicial economy and the comprehensive disposition of litigation, and to protect parties from the vexation of concurrent litigation over the same subject matter.

*Marrakush Soc. v. N.J. State Police*, 2009 WL 2366132, at *29 (D.N.J. July 30, 2009)(internal citations omitted).

An action is duplicative and thus subject to dismissal where it "involv[es] the same parties and the same issues already before another district court." *E.E.O.C.*, 850 F.2d at 971. The two actions filed by plaintiffs here are plainly duplicative. There is no dispute that these two actions involve the same parties: plaintiffs Stephen and Lisa Wendell, and Defendants Johnson & Johnson, Centocor, Abbott, GSK, Teva/Gate, and Par. Nor can there be any dispute that the two actions involve the same issues. *See Maximum Human Performance, Inc. v. Dymatize Enters.*, Civil Action No. 09-235 (PGS), 2009 WL 2778104, at *3 (D.N.J. Aug. 27, 2009) ("there must be a substantial overlap between the two actions, but the issues and parties involved need not be identical"). Plaintiffs assert virtually identical factual allegations in both complaints: Mr. Wendell was diagnosed with ulcerative colitis and irritable bowel disease; he was variously prescribed mercaptopurine, Remicade, and Humira; he subsequently developed hepatosplenic T-cell lymphoma; and his injuries were caused by the drugs individually or in combination. (*Compare* Cal. Am. Compl. ¶¶ 59–63, *with* N.J. Am. Compl. ¶¶ 31–35) And, except for additional causes of action in the California case that plaintiffs intend to dismiss (*see* Ex. 5, 6), plaintiffs assert similar causes of action against Defendants: strict liability and negligence.

(*Compare* Cal. Am. Compl. ¶¶ 33–60, *with* N.J. Am. Compl. ¶¶ 22–44)  Thus there can be no dispute that the suits are identical and one of the duplicative actions must be dismissed.

Typically, under the federal comity doctrine, the second-filed suit is dismissed in favor of the first-filed suit.  *See E.E.O.C.*, 850 F.2d at 971 ("in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it" (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)).  Here, however, both actions were filed on the same day, and Defendants are unable to determine which action was filed earliest that day. So either action is appropriate for dismissal.  Because the California action has progressed considerably further, however, it should be maintained and this action should be dismissed.  *See, e.g., Maximum Human Performance*, 2009 WL 2778104, at *3 ("[p]roper bases upon which a court may depart" from the first-filed rule include "where the later-filed action has developed further than the first-filed action"); *In re M.C. Prods., Inc.*, 205 F.3d 1351, No. 98-56964, 1999 WL 1253223, at *1 n.2 (9th Cir. 1999) ("where duplicative actions are pending in two federal courts, and the second-filed has progressed further than the first-filed suit, dismissal of the first in favor of the second is appropriate.").  Here, the California action has progressed substantially further than the New Jersey action.  In California, among other things, Defendants Johnson & Johnson, Centocor, GSK, Teva/Gate, and Par have answered the complaint; the court has granted Abbott's initial motion to dismiss; Abbott's motion to dismiss the amended complaint has been fully briefed and is pending before the court; other defendants have filed a Fed. R. Civ. P. 12(c) motion; the parties have served their initial disclosures; the parties have filed their joint case-management-conference statement; an initial case management conference is set for June 3, 2010; a mediator has been appointed under the local rules; and an initial meeting with the mediator took place on April 9, 2010.  (*See generally* Cal. St. Ct. Dkt.; N.D. Cal. Dkt.)  In this

10

action, in contrast, this motion is the first significant activity. Accordingly, this case should be dismissed under the federal comity doctrine in favor of the California action.

**II.    In The Alternative, The Court Should Transfer This Case To The U. S. District Court For The Northern District of California**

**A.    Section 1404 Transfers Are Subject To A Case-By-Case, Multi-Factor Examination**

"[S]ection 1404(a) was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). It provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

The Third Circuit has held that a Court should not strictly limit its consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and has outlined a more comprehensive list of relevant public and private interest factors: "(1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) 'convenience of the parties as indicated by their relative physical and financial conditions'; (5) 'the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora'; (6) the location of books and records; (7) the enforceability of the judgment; (8) practical considerations that could expedite or simplify trial; (9) the level of court congestion in the two fora; (10) 'the local interest in deciding local controversies at home'; (11) the public policies of the fora; and (12) in a diversity case, the familiarity of the two courts with state law." *In re Amendt*, 169 F. App'x 93, 96 (3d Cir. 2006) (quoting *Jumara*, 55 F.3d at 879–80).

"[T]he burden is on the moving party to show the proposed alternate forum is not only adequate but also more convenient than the present forum." *AT&T. v. MCI Commc'ns Corp.*, 736 F. Supp. 1294, 1305 (D.N.J. 1990); *see also In re Amendt*, 169 F. App'x at 96.

**B.      All Section 1404 Factors Weigh In Favor Of Transfer To The Northern District Of California**

The factors that are relevant to a transfer analysis weigh heavily in favor of transfer. Most significantly, plaintiffs filed a virtually identical suit in the Northern District of California. "Where related lawsuits exist, it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court and not simultaneously before two tribunals." *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 454 (D.N.J. 1999) (quoting *Ricoh Co. v. Honeywell, Inc.*, 817 F.Supp. 473, 487 (D.N.J. 1993)) (internal quotations omitted); *see also Travelers Indem. Co. v. E.F. Corp.*, No. 95-5660, 1997 WL 135819, at * 8 (E.D. Pa. Mar. 17, 1997) ("The presence of a related case in the transferee forum is a powerful reason to grant a change of venue." (internal quotations omitted)).  This Court too has noted that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that s 1404(a) was designed to prevent." *Am. Cyanamid Co. v. Eli Lilly & Co.*, 903 F. Supp. 781, 787 (D.N.J. 1995) (Pisano, J.) (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)).  There are numerous benefits to consolidating such litigation in a single forum: "[c]ases can be consolidated before one judge thereby promoting judicial efficiency; pretrial discovery can be conducted in a more orderly manner; witnesses can be saved the time and expense of appearing at trial in more than one court; and duplicative litigation involving the filing of records in both courts is avoided, thereby eliminating unnecessary expense and the possibility of inconsistent results." *Lawrence*, 56 F. Supp. 2d at 453–54 (quoting *Ricoh*, 817 F.Supp. at 487).

The fact that the California suit has progressed significantly and resulted in a substantive ruling, and that this suit was not filed prior to the California suit, strongly favors the continuation of this litigation in the California forum. *See Lawrence*, 56 F. Supp. 2d at 454 ("When two suits involving the same parties and subject matter are pending concurrently, the first-filed suit should have priority absent a showing that the balance of inconvenience favors transfer or unless there are special circumstances which justify giving priority to the second suit." (quoting *Ricoh*, 817 F.Supp. at 487)).

The remaining relevant factors also favor transfer.  In this suit, plaintiffs and most of the non-party witnesses that will likely be called to testify, including treating physicians and other percipient witnesses, are located in California, along with their records and files. (*See* Plaintiffs' Initial Disclosures in N.D. Cal., Ex. 8 (identifying 42 of the 44 treating physicians and hospitals as California residents))  Moreover, five out of the six named Defendants are, in fact, not located in New Jersey.  Defendants Centocor Ortho Biotech Inc. and Teva Pharmaceuticals USA, Inc. (of which Gate Pharmaceuticals is a division and not a separate legal entity) are residents of the Commonwealth of Pennsylvania.  Par Pharmaceutical, Inc. is a resident of the State of New York.  Defendant GSK (sued herein as SmithKline Beecham Corporation) is a resident of the State of Delaware.  Defendant Abbott Laboratories is a resident of the State of Illinois.  Although defendant Johnson & Johnson is a resident of the state of New Jersey, it is a named defendant only because of the alleged actions of its subsidiary, Defendant Centocor Ortho Biotech Inc., which is not a New Jersey resident.

In addition, this is not a local controversy; the events at issue occurred in California. Mr. Wendell's medical diagnosis, treatment, and alleged injury—all the operative facts in this case—occurred in California.  Consequently, under New Jersey choice of law rules, California

law governs Plaintiffs' claims. *See, e.g., Torres v. Lucca's Bakery*, 487 F. Supp. 2d 507, 514 (D.N.J. 2007) (holding that New Jersey law should govern product liability claims because plaintiff lived and worked in New Jersey and the allegedly defective product was shipped to New Jersey, installed and used in New Jersey, and the accident occurred in New Jersey). A California court would thus be more familiar with the applicable law. *See Landmark Fin. Corp. v. Fresenius Med. Care Holdings, Inc.*, No. 09-3689, 2010 WL 715454, at *4 (D.N.J. Mar. 1, 2010) (Pisano, J.) ("allowing a local court to construe its own law is a factor weighing in favor of transfer").

The balance of factors in this case weighs even more strongly in favor of transfer than the balance of factors in other cases in which this Court and other courts have transferred suits to other venues. Courts in this District generally find that the existence of related litigation ***involving different plaintiffs*** is sufficient to justify transfer when the other relevant factors are in equipoise or even favor the New Jersey forum. *See, e.g., Yang v. Odom*, 409 F. Supp. 2d 599, 608 (D.N.J. 2006) (Pisano, J.) (transferring case from New Jersey to Georgia where the Georgia court "is already intimately familiar with the facts and legal questions underlying this lawsuit"); *Lawrence*, 56 F. Supp. 2d at 453–55 (transferring case from New Jersey to Texas where related litigation was ongoing, despite the fact that the Texas litigation involved different plaintiffs and the action before the New Jersey court involved "some facts and injuries which occurred in, but which are not limited to, the State of New Jersey"); *AT&T*, 736 F. Supp. at 1309, 1313 (holding that "the public interests in transferring a case to a forum in which a related case is pending is sufficient to outweigh the private interest balance which does not favor transfer"); *Todd Shipyards Corp. v. Cunard Line Ltd.*, 708 F.Supp. 1440, 1450 (D.N.J. 1989) (holding that the existence of a similar pending action outweighed arguments centered upon the convenience of

14

the parties and witnesses).   The existence of a ***virtually identical action involving the same***

***plaintiffs***, which has resulted in substantive rulings, and the fact that the residual relevant factors

also weigh in favor of transfer, make this suit a textbook transfer case.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this case in its entirety or, in the

alternative, transfer the case to the U.S. District Court for the Northern District of California.

Date:   April 21, 2010

<div style="margin-left:40%">

By: s/Anne M. Patterson

Riker, Danzig, Scherer, Hyland
  & Perretti LLP
1 Speedwell Avenue
Morristown, NJ  07962-1981

*Attorneys for Defendant*
*Abbott Laboratories*

</div>

*Of Counsel for*
*Defendant Abbott Laboratories:*

John Donley, Esq.
Andrew P. Bautista, Esq.
Renee D. Smith, Esq.
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654

<div style="margin-left:40%">

By: s/Peter C. Harvey

Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY  10036-6710

*Attorneys for Defendants*
*Johnson & Johnson and*
*Centocor Ortho Biotech, Inc.*

</div>

*Of Counsel for*
*Defendants Johnson & Johnson*
*and Centocor Ortho Biotech, Inc.*

John D. Winter, Esq.
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY  10036-6710

Michelle A. Childers, Esq.
Drinker Biddle & Reath LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235

<div style="margin-left:45%">

By: s/Joseph P. Thomas_____
New Jersey Bar No. 002211989
Ulmer & Berne LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202

*Attorneys for Defendants*
*Teva Pharmaceuticals USA, Inc., its*
*Division, Gate Pharmaecuticals, and Par*
*Pharmaceutical, Inc.*

</div>

*Of Counsel for*
*Defendants Teva Pharmaceuticals USA, Inc.,*
*its Division, Gate Pharmaecuticals, and*
*Par Pharmaceutical, Inc.*

Jeffrey F. Peck, Esq.
Prentiss W. Hallenbeck, Jr., Esq.
Ulmer & Berne LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202

<div style="margin-left:45%">

By: s/Timothy J. Fraser_____
Drinker Biddle & Reath LLP
500 Campus Drive
Florham Park, New Jersey  07932-1047

*Attorneys for Defendant*
*GlaxoSmithKline LLC*
*f/k/a SmithKline Beecham Corporation*

</div>

16

*Of Counsel for*
*Defendant GlaxoSmithKline LLC*

William A. Hanssen, Esq.
Drinker, Biddle & Reath LLP
333 South Grand Avenue, Suite 1700
Los Angeles, CA 90071-1504

4036075