Anne M. Patterson, Esq.
RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Attorneys for Defendant
Abbott Laboratories

|  |  |
|---|---|
| STEPHEN P. WENDELL, for himself and as Administrator <u>ad prosequendum</u> of the ESTATE of MAXX WENDELL, deceased and/or successor-in-interest to MAX WENDELL, deceased; and LISA WENDELL, for herself, | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY<br><br>Case No. 09-cv-3273-JAP-TJB |
| Plaintiffs, | |
| vs. | Hon. Joel A. Pisano, U.S.D.J.<br>Hon. Tonianne J. Bongiovanni, U.S.M.J. |
| JOHNSON & JOHNSON; CENTOCOR, INC.; ABBOTT LABORATORIES; SMITHKLINE BEECHAM d/b/a GLAXOSMITHKLINE; TEVA PHARMACEUTICALS USA; GATE PHARMACEUTICALS, a division of TEVA PHARMACEUTICALS, USA; and PAR PHARMACEUTICAL, | **CERTIFICATION OF ANNE M. PATTERSON IN SUPPORT OF MOTION BY DEFENDANTS TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER**<br><br>(Document electronically filed) |
| Defendants. | |

I, ANNE M. PATTERSON, of full age, hereby certify as follows:

1.     I am an attorney at law of the State of New Jersey and a member of

the law firm of Riker, Danzig, Scherer, Hyland & Perretti LLP, counsel of record for

defendant Abbott Laboratories.

2.     I make this Certification in support of the Joint Motion of Defendants Abbott Laboratories, Johnson & Johnson, Centocor Ortho Biotech, Inc., GlaxoSmithKline LLC f/k/a SmithKline Beecham Corporation (identified in the Complaint as SmithKline Beecham d/b/a GlaxoSmithKline), Teva Pharmaceuticals USA, Inc. and its division Gate Pharmaceuticals, and Par Pharmaceutical, Inc. (together, "Defendants") for an Order dismissing this case under the federal comity doctrine, or in the alternative, transferring this case pursuant to 28 U.S.C. § 1404, to the U.S. District Court for the Northern District of California.

3.     Attached hereto as Exhibit 1 is a true copy of the Complaint for Damages in <u>Wendell v. Johnson & Johnson et al.</u>, Cse No. CGC-09-490051 (Sup. Ct. Cal.).

4.     Attached hereto as Exhibit 2 is a true copy of the First Amended Complaint and Jury Demand in <u>Wendell v. Johnson & Johnson et al.</u>, Civil Action No. 09-04124 (CW), U.S. District Court, Northern District of California.

5.     Attached hereto as Exhibit 3 is a true copy of the docket sheet in <u>Wendell v. Johnson & Johnson et al.</u>, Cse No. CGC-09-490051 (Sup. Ct. Cal.), generated on April 16, 2010.

6.     Attached hereto as Exhibit 4 is a true copy of the docket sheet in <u>Wendell v. Johnson & Johnson et al.</u>, Civil Action No. 09-04124 (CW), U.S. District Court, Northern District of California, generated on April 20, 2010.

7.     Attached hereto as Exhibit 5 is a true copy of a letter dated March 1, 2010 from Kevin Haverty, Esq. to William A. Hanssen, Esq.

8.      Attached hereto as Exhibit 6 is a true copy of a letter dated March 11, 2010 from Kevin Haverty, Esq. to William A. Hanssen, Esq.

9.      Attached hereto as Exhibit 7 is a true copy of a letter dated March 10, 2010 from William A. Hanssen, Esq. to Kevin Haverty, Esq.

10.     Attached hereto as Exhibit 8 is a true copy of Plaintiffs' Initial Disclosures in <u>Wendell v. Johnson & Johnson et al.</u>, Civil Action No. 09-04124 (CW), U.S. District Court, Northern District of California.

I CERTIFY that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I may be subject to punishment.

Date:  April 21, 2010

<u>By: s/Anne M. Patterson</u>
Riker, Danzig, Scherer, Hyland
     & Peretti LLP
1 Speedwell Avenue
Morristown, NJ  07962-1981
Tel:  (973) 451-8482
Fax:  (973) 451-8706
apatterson@riker.com

*Attorneys for Defendant*
*Abbott Laboratories*

4035999

# EXHIBIT 1

1   Fabrice Vincent (State Bar No. 160780)
    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
2   Embarcadero Center West
    275 Battery Street
3   San Francisco, CA  94111-3339
    Telephone:  (415) 956-1000
4   Facsimile:  (415) 956-1008

    SUMMONS ISSUED

    CASE MANAGEMENT CONFERENCE SET

    F I L E D
    San Francisco County Superior Court

    DEC - 2 2009

    GORDON PARK-LI, Clerk
    BY: _____

5   Attorneys for Plaintiffs

    I M A G E D

    DEC - 4 2009 - 9⁰⁰ AM

6

7   JUL - 2 2009              DEPARTMENT 212

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   COUNTY OF SAN FRANCISCO

10

11  STEPHEN WENDELL and LISA          Case No.   CGC-09-490051
    WENDELL, for themselves and as
12  successors in interest to MAX WENDELL,   **COMPLAINT FOR DAMAGES**
    deceased,
13                                    1.  **Fraud & Deceit**
                Plaintiffs,          2.  **Negligence, Recklessness & Gross**
14                                       **Negligence**
       v.                            3.  **Negligent Misrepresentation**
15                                    4.  **Negligence**
    JOHNSON & JOHNSON; CENTOCOR,      5.  **Negligence *Per Se***
16  INC; ABBOTT LABORATORIES;         6.  **Strict Liability—Failure To Warn**
    SMITHKLINE BEECHAM d/b/a/         7.  **Breach Of Implied Warranty Of**
17  GLAXOSMITHKLINE; TEVA                **Merchantability**
    PHARMACEUTICALS USA; GATE         8.  **Breach Of Express Warranty**
18  PHARMACEUTICALS, a division of    9.  **Violation Of Business And Professions**
    TEVA PHARMACEUTICALS USA; PAR        **Code Sections 17200, *Et Seq.***
19  PHARMACEUTICALS; MYLAN            10. **Wrongful Death**
    LABORATORIES, INC.; BOEHRINGER
20  INGELHEIM CORPORATION;
    BOEHRINGER INGELHEIM ROXANE,
21  INC., a subsidiary of BOEHRINGER
    INGELHEIM CORPORATION;            **DEMAND FOR A JURY TRIAL**
22  ROXANE LABORATORIES, INC., a
    Subsidiary of BOEHRINGER
23  INGELHEIM CORPORATION; and
    DOES 1 through 150 inclusive,
24
                Defendants.
25

26

27

28

823343.3

                    COMPLAINT FOR DAMAGES

## GENERAL ALLEGATIONS

1.      This action arises from the product liability of Defendants for their drug products which plaintiff, MAXX WENDELL, deceased, consumed and thereby suffered personal injury and death.  Plaintiffs STEPHEN WENDELL and LISA WENDELL, the natural parents of MAXX WENDELL, deceased, seek damages for themselves and on behalf of their son arising out of the injury and death of their MAXX WENDELL, deceased.  Plaintiffs are adult persons who are citizen of the United States and residents of Novato, California.  At all times relevant hereto, the term "Plaintiffs," unless otherwise denoted, shall include MAXX WENDELL, deceased, by and through his successors in interest, his parents, STEPHEN WENDELL, and LISA WENDELL, for herself.

2.      MAXX WENDELL, deceased was variously prescribed Defendants= drug products Remicade® (imfliximab) and Humira® (adalimumab) in combination with Purinethol® (mercaptopurine or 6-MP) for the treatment of inflammatory bowel disease (IBD) and ulcerative colitis (UC) first diagnosed when he was 12 years old.  Plaintiffs are informed and believe and thereon allege that the medications administered to MAXX WENDELL, were researched, designed, formulated, compounded, tested, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, placed in the stream of commerce, and sold or otherwise provided to Plaintiff, MAXX WENDELL, by Defendants, JOHNSON & JOHNSON and/or CENTOCOR, INC. and/or ABBOTT LABORATORIES and/or SMITHKLINE BEECHAM d/b/a GLAXOSMITHKLINE and/or TEVA PHARMACEUTICALS USA and/or GATE PHARMACEUTICALS, a division of TEVA PHARMACEUTICALS, USA and/or PAR PHARMACEUTICALS and/or MYLAN LABORATORIES, INC. and/or BOEHRINGER INGELHEIM CORPORATION and/or BOEHRINGER INGELHEIM ROXANE, INC., a subsidiary of BOEHRINGER INGELHEIM CORPORATION and/or ROXANE LABORATORIES, INC., a subsidiary of BOEHRINGER INGELHEIM CORPORATION and/or DOES 1 through 150, inclusive, administered, distributed, recommended, and prescribed said medication to Plaintiff, MAXX WENDELL.  This action seeks, *inter alia*, general, special and punitive damages for the injuries suffered by MAXX

823343.3

- 1 -

COMPLAINT FOR DAMAGES

1   WENDELL, deceased and his parents STEPHEN WENDELL and LISA WENDELL arising

2   from the injuries and death of MAXX WENDELL, deceased.

3          3.      Plaintiffs do not know the true names and identities of those Defendants

4   designated as DOES 1 through 150, inclusive, but allege that each of said fictitiously name

5   Defendants was negligently and unlawfully responsible for the events herein described, and for

6   the injuries and damages sustained by Plaintiffs and each of them and Plaintiffs, will ask leave of

7   court to amend this complaint when the identity of each such fictitiously named defendant has

8   been ascertained.

9          4.      Plaintiffs' injuries proximately resulted from the wrongful, reckless, and

10  negligent acts and omissions, and fraudulent misrepresentations of Defendants and/or each of

11  them, all of which occurred within the venue of this court.

12         5.      At all times relevant to this action, the term "Defendants" includes all

13  Defendants unless otherwise noted, including but not limited to JOHNSON & JOHNSON and/or

14  CENTOCOR, INC. and/or ABBOTT LABORATORIES and/or SMITHKLINE BEECHAM

15  d/b/a GLAXOSMITHKLINE and/or TEVA PHARMACEUTICALS USA and/or GATE

16  PHARMACEUTICALS, a division of TEVA PHARMACEUTICALS, USA and/or PAR

17  PHARMACEUTICALS and/or MYLAN LABORATORIES, INC. and/or BOEHRINGER

18  INGELHEIM CORPORATION and/or BOEHRINGER INGELHEIM ROXANE, INC., a

19  subsidiary of BOEHRINGER INGELHEIM CORPORATION and/or ROXANE

20  LABORATORIES, INC., a subsidiary of BOEHRINGER INGELHEIM CORPORATION and

21  DOES 1 through 150, inclusive.

22         6.      At all times relevant to this action, each of the Defendants, including

23  Does 1 through 150,  was the officer, director, agent, servant, partner, manager, aider and abettor,

24  employee or employer, parent or subsidiary corporation, co-conspirator and/or joint venturer of

25  each of the other Defendants herein and were at all times operating and acting within the purpose

26  and scope of said corporation, agency, employment, service, partnership, conspiracy and/or joint

27  venture and ratified, condoned, and continued each others conduct and rendered substantial

28

823343.3                              - 2 -
                          COMPLAINT FOR DAMAGES

1   assistance and encouragement to the other Defendants, that their conduct constituted a breach of

2   duty.

3          7.      There exists and, at all times herein mentioned, there existed a unity of

4   interest in ownership between certain Defendants and other certain Defendants such that any

5   individuality and separateness between the certain Defendants has ceased and these Defendants

6   are the alter ego of the other certain Defendants and exerted control over those Defendants.

7   Adherence to the fiction of the separate existence of these certain Defendants as an entity distinct

8   from other certain Defendants will permit an abuse of the corporate privilege and would sanction

9   a fraud and/or would promote injustice.

10         8.      At all times herein mentioned the Defendants, and each of them were

11  engaged in the business of or were successors in interest to, entities engaged in the business of

12  researching, designing, formulating, compounding, testing, manufacturing, producing, processing,

13  assembling, inspecting, distributing, marketing, labeling, promoting, packaging, prescribing

14  and/or advertising for sale, and selling of the drugs for use and ingestion by Plaintiff, MAXX

15  WENDELL, deceased and which actually were used and ingested by Plaintiff MAXX

16  WENDELL.

17         9.      At all times herein mentioned, the Defendants and each of them, were

18  authorized to do business within the state of California and did in fact supply, compound,

19  distribute, formulate, prescribe and sell the aforementioned products and medications within the

20  state of California.  All events giving rise to this cause of action occurred in the County of San

21  Francisco, State of California.

22         10.     At all times herein mentioned, the officers and/or directors of the corporate

23  Defendants named herein participated in, authorized, ratified, condoned, and directed the

24  production and promotion of the aforementioned products and administration of narcotic

25  medications when they knew or with the exercise of reasonable care and diligence should have

26  known, of the hazards and dangerous propensities of said products and thereby actively

27  participated in the tortuous conduct which resulted in the injuries suffered by Plaintiffs and each

28  of them.

823343.3                                - 3 -
                              COMPLAINT FOR DAMAGES

**PLAINTIFFS**

11.     The events giving rise to this cause of action occurred in the County of San Francisco, State of California.

12.     Plaintiffs Stephen and Lisa Wendell are and at all times herein were residents of the County of Marin, State of California and sue individually and as successors in interest, qualifying heirs and wrongful death claimants, pursuant to CCP §§ 377.30 and 377.60.

13.     That Plaintiffs and each of them do not know the true names and identities of those Defendants designated as DOES 1 through 150, inclusive, but allege that each of said fictitiously-named Defendants, either separately or in combination with each other or the other named Defendants, negligently and unlawfully were responsible for the events hereinafter described, and for the injuries and damages sustained by Plaintiffs and each of them and Plaintiffs will ask leave of court to amend this allegation when the identity of each said fictitiously named Defendants has been ascertained.

14.     At all times herein mentioned, Defendants, DOES 101 through 150, inclusive, were and are product providers and/or manufacturers, or in some way in the stream of commerce relative to the defective and unsafe drug which caused or contributed to Plaintiff's, MAXX WENDELL's, injuries.

15.     Defendants, JOHNSON & JOHNSON and/or CENTOCOR, INC. and/or ABBOTT LABORATORIES and/or SMITHKLINE BEECHAM d/b/a GLAXOSMITHKLINE and/or  TEVA PHARMACEUTICALS USA and/or GATE PHARMACEUTICALS, a division of TEVA PHARMACEUTICALS, USA and/or PAR PHARMACEUTICALS and/or MYLAN LABORATORIES, INC. and/or BOEHRINGER INGELHEIM CORPORATION and/or BOEHRINGER INGELHEIM ROXANE, INC., a subsidiary of BOEHRINGER INGELHEIM CORPORATION and/or ROXANE LABORATORIES, INC., a subsidiary of BOEHRINGER INGELHEIM CORPORATION and DOES 1 through, inclusive. Defendants, and each of them, failed to inform, monitor, examine, and/or warn Plaintiffs of the serious side effects associated with the use of their drugs either singly or in combination.

823343.3

- 4 -

COMPLAINT FOR DAMAGES

1       16.    In mid-July, 2007, MAXX WENDELL, deceased, developed and was

2    diagnosed with a rare form of cancer called hepatosplenic T-cell lymphoma.  This rare cancer has

3    been associated with the use of Defendants' products singly and/or in combination.  Plaintiffs

4    were never properly warned, properly examined or monitored by Defendants JOHNSON &

5    JOHNSON and/or CENTOCOR, INC. and/or ABBOTT LABORATORIES and/or

6    SMITHKLINE BEECHAM d/b/a GLAXOSMITHKLINE and/or  TEVA

7    PHARMACEUTICALS USA and/or GATE PHARMACEUTICALS, a division of TEVA

8    PHARMACEUTICALS, USA and/or PAR PHARMACEUTICALS and/or MYLAN

9    LABORATORIES, INC. and/or BOEHRINGER INGELHEIM CORPORATION and/or

10    BOEHRINGER INGELHEIM ROXANE, INC., a subsidiary of BOEHRINGER INGELHEIM

11    CORPORATION and/or ROXANE LABORATORIES, INC., a subsidiary of BOEHRINGER

12    INGELHEIM CORPORATION and DOES 1 through 150, inclusive and Defendants and each of

13    them never informed Plaintiffs of the adverse side effects of the development of hepatosplenic

14    T-cell lymphoma involved in the use of their products either singly or in combination, nor did

15    Defendants and each of them take the proper steps to protect Plaintiff, MAXX WENDELL, from

16    developing or preventing the further onset of hepatosplenic T-cell lymphoma, such as medical

17    monitoring, analysis and examination, independent study, discontinuation, and administering

18    alternative and safer blood treatments and medications.

19       17.    MAXX WENDELL'S diagnosis of hepatosplenic T-cell lymphoma, from

20    which he ultimately died, was the result of his ingestion of defective drug(s) for an extended

21    period of time.  Defendants and each of them failed to warn, monitor, examine or properly

22    administer a safer alternative treatment, as a proximate result of which the drug(s) sold,

23    distributed, formulated, manufactured, labeled, endorsed, and prescribed by Defendants were

24    defective.

25       18.    This action arises out of, *inter alia*, Defendants' willing, knowing, and

26    intentional concealment of the serious health risks associated with the use of their drugs either

27    singly or in combination and Defendants' intentional failure to adequately and appropriately warn

28    any and all persons who prescribed Defendants' product, including but not limited to any and all

823343.3

COMPLAINT FOR DAMAGES

1   physicians, of the known, and/or reasonably knowable, serious and permanent risks of harm

2   associated with the use of their drugs either singly or in combination.

3   **DEFENDANTS**

4   19.    At all times material hereto defendant JOHNSON & JOHNSON was a

5   corporation or other business entity with its principal place of business in the City of New

6   Brunswick, State of Jersey and is the parent corporation of defendant CENTOCOR, a wholly-

7   owned subsidiary of JOHNSON & JOHNSON and was involved in the discovery and/or design

8   and/or assembly and/or manufacture and/or testing and/or packaging and/or labeling and/or

9   compounding and/or marketing and/or distribution and/or sale and/or was otherwise involved in

10  placing in the stream of commerce the prescription pharmaceutical infliximab sold under the

11  brand name Remicade®.  Said Defendant is a pharmaceutical company believed by Plaintiffs to be

12  licensed or otherwise authorized in the State of California to advertise, sell and distribute

13  medications to ultimate consumers like MAXX WENDELL and was and is actively engaged in

14  such activity in and within the State of California.

15  20.    At all times material hereto, defendant CENTOCOR, INC. was a

16  corporation or other business entity and a wholly owned subsidiary of defendant JOHNSON &

17  JOHNSON with its principal place of business in Malvern, Pennsylvania and was involved in the

18  discovery and/or design and/or assembly and/or manufacture and/or testing and/or packaging

19  and/or labeling and/or compounding and/or marketing and/or distribution and/or sale and/or was

20  otherwise involved in placing in the stream of commerce the prescription pharmaceutical

21  infliximab sold under the brand name Remicade®.  Said Defendant is a pharmaceutical company

22  believed by Plaintiffs to be licensed or otherwise authorized in the State of California to advertise,

23  sell and distribute medications to ultimate consumers like MAXX WENDELL and was and is

24  actively engaged in such activity in and within the State of California.

25  21.    At all times material hereto defendant ABBOTT LABORATORIES is a

26  corporation or other business entity with its principal place of business in North Chicago, Illinois

27  and was involved in the discovery and/or design and/or assembly and/or manufacture and/or

28  testing and/or packaging and/or labeling and/or compounding and/or marketing and/or

823343.3                        - 6 -
COMPLAINT FOR DAMAGES

1   distribution and/or sale and/or was otherwise involved in placing in the stream of commerce the

2   prescription pharmaceutical adalimumab sold under the brand name Humira®.  Said Defendant is

3   a pharmaceutical company believed by Plaintiffs to be licensed or otherwise authorized in the

4   State of California to advertise, sell and distribute medications to ultimate consumers like MAXX

5   WENDELL and was and is actively engaged in such activity in and within the State of California.

6        22.   At all times material hereto defendant SMITHKLINE BEECHAM d/b/a

7   GLAXOSMITHKLINE was a corporation or other business entity with its principal place of

8   business in Philadelphia, Pennsylvania and was involved in the discovery and/or design and/or

9   assembly and/or manufacture and/or testing and/or packaging and/or labeling and/or

10  compounding and/or marketing and/or distribution and/or sale and/or was otherwise involved in

11  placing in the stream of commerce the prescription pharmaceutical mercaptopurine sold under the

12  brand name Purinethol®.  Said Defendant is a pharmaceutical company believed by Plaintiffs to

13  be licensed or otherwise authorized in the State of California to advertise, sell and distribute

14  medications to ultimate consumers like MAXX WENDELL and was and is actively engaged in

15  such activity in and within the State of California.

16       23.   At all times material hereto defendant TEVA PHARMACEUTICALS

17  USA was a corporation or other business entity with its principal place of business in Horsham,

18  Pennsylvania and was involved in the discovery and/or design and/or assembly and/or

19  manufacture and/or testing and/or packaging and/or labeling and/or compounding and/or

20  marketing and/or distribution and/or sale and/or was otherwise involved in placing in the stream

21  of commerce the prescription pharmaceutical mercaptopurine sold under the brand name

22  Purinethol®.  Said Defendant is a pharmaceutical company believed by Plaintiffs to be licensed or

23  otherwise authorized in the State of California to advertise, sell and distribute medications to

24  ultimate consumers like MAXX WENDELL and was and is actively engaged in such activity in

25  and within the State of California.

26       24.   At all times material hereto defendant GATE PHARMACEUTICALS was

27  a corporation or other business entity and a division and/or subsidiary of TEVA

28  PHARMACEUTICALS USA with its principal place of business in Horsham, Pennsylvania and

823343.3

- 7 -

COMPLAINT FOR DAMAGES

1   was involved in the discovery and/or design and/or assembly and/or manufacture and/or testing

2   and/or packaging and/or labeling and/or compounding and/or marketing and/or distribution

3   and/or sale and/or was otherwise involved in placing in the stream of commerce the prescription

4   pharmaceutical mercaptopurine sold under the brand name Purinethol®. Said Defendant is a

5   pharmaceutical company believed by Plaintiffs to be licensed or otherwise authorized in the State

6   of California to advertise, sell and distribute medications to ultimate consumers like MAXX

7   WENDELL and was and is actively engaged in such activity in and within the State of California.

8           25.    At all times material hereto defendant PAR PHARMACEUTICALS was a

9   corporation or other business entity with its principal place of business in Woodcliff Lake, New

10  Jersey and was involved in the discovery and/or design and/or assembly and/or manufacture

11  and/or testing and/or packaging and/or labeling and/or compounding and/or marketing and/or

12  distribution and/or sale and/or was otherwise involved in placing in the stream of commerce the

13  prescription pharmaceutical mercaptopurine.  Said Defendant is a pharmaceutical company

14  believed by Plaintiffs to be licensed or otherwise authorized in the State of California to advertise,

15  sell and distribute medications to ultimate consumers like MAXX WENDELL and was and is

16  actively engaged in such activity in and within the State of California.

17          26.    At all times material hereto defendant MYLAN LABORATORIES was a

18  corporation or other business entity headquartered in Pittsburgh, Pennsylvania and was involved

19  in the discovery and/or design and/or assembly and/or manufacture and/or testing and/or

20  packaging and/or labeling and/or compounding and/or marketing and/or distribution and/or sale

21  and/or was otherwise involved in placing in the stream of commerce the prescription

22  pharmaceutical mercaptopurine.  Said Defendant is a pharmaceutical company believed by

23  Plaintiffs to be licensed or otherwise authorized in the State of California to advertise, sell and

24  distribute medications to ultimate consumers like MAXX WENDELL and was and is actively

25  engaged in such activity in and within the State of California.

26          27.    At all times material hereto defendant BOEHRINGER INGELHEIM

27  CORPORATION was a corporation or other business entity with its principal place of business in

28  Ridgefield, Connecticut and was involved in the discovery and/or design and/or assembly and/or

823343.3                            - 8 -

COMPLAINT FOR DAMAGES

1   manufacture and/or testing and/or packaging and/or labeling and/or compounding and/or

2   marketing and/or distribution and/or sale and/or was otherwise involved in placing in the stream

3   of commerce the prescription pharmaceutical mercaptopurine.  Said Defendant is a

4   pharmaceutical company believed by Plaintiffs to be licensed or otherwise authorized in the State

5   of California to advertise, sell and distribute medications to ultimate consumers like MAXX

6   WENDELL and was and is actively engaged in such activity in and within the State of California.

7        28.    At all times material hereto defendant BOEHRINGER INGELHEIM

8   ROXANE INC., was a corporation or other business entity and a subsidiary of BOEHRINGER

9   INGELHEIM CORPORATION with its principal place of business in Columbus, Ohio and was

10   involved in the discovery and/or design and/or assembly and/or manufacture and/or testing and/or

11   packaging and/or labeling and/or compounding and/or marketing and/or distribution and/or sale

12   and/or was otherwise involved in placing in the stream of commerce the prescription

13   pharmaceutical mercaptopurine.  Said Defendant is a pharmaceutical company believed by

14   Plaintiffs to be licensed or otherwise authorized in the State of California to advertise, sell and

15   distribute medications to ultimate consumers like MAXX WENDELL and was and is actively

16   engaged in such activity in and within the State of California.

17        29.    At all times material hereto defendant ROXANE LABORATORIES, INC.,

18   was a corporation or other business entity and a subsidiary of BOEHRINGER INGELHEIM

19   CORPORATION with its principal place of business in Columbus, Ohio and was involved in the

20   discovery and/or design and/or assembly and/or manufacture and/or testing and/or packaging

21   and/or labeling and/or compounding and/or marketing and/or distribution and/or sale and/or was

22   otherwise involved in placing in the stream of commerce the prescription pharmaceutical

23   mercaptopurine.  Said Defendant is a pharmaceutical company believed by Plaintiffs to be

24   licensed or otherwise authorized in the State of California to advertise, sell and distribute

25   medications to ultimate consumers like MAXX WENDELL and was and is actively engaged in

26   such activity in and within the State of California.

27        30.    At all times herein mentioned the Defendants, and each of them were

28   engaged in the business of or were successors in interest to, entities engaged in the business of

823343.3         - 9 -

COMPLAINT FOR DAMAGES

1  researching, designing, formulating, compounding, testing, manufacturing, producing, processing,

2  assembling, inspecting, distributing marketing, labeling, promoting, packaging, prescribing

3  and/or advertising for sale, and selling their pharmaceutical products for the use and ingestion by

4  people like MAXX WENDELL.

5         31.    At all times herein mentioned, the Defendants and each of them, were

6  authorized to do business within the State of California and did in fact supply and sell the

7  aforementioned drugs within the State of California.  All events giving rise to this cause of action

8  occurred in the County of San Francisco, State of California.

9         32.    At all times herein mentioned, the officers and/or directors of the corporate

10  Defendants named herein participated in, authorized and/or directed the production and

11  promotion of the aforementioned products when they knew or with the exercise of reasonably

12  care should have known, of the hazards and dangerous propensities of said products and thereby

13  actively participated in the tortious conduct which resulted in the physical injuries and other

14  damages suffered by Plaintiffs.

15         33.    Upon information and belief, Plaintiffs, allege that Defendants DOES 1

16  through 50 are corporations, partnerships, businesses, persons, agents, joint venturers, employees

17  of businesses, or operators engaged in manufacturing, supplying, formulating, distributing,

18  marketing, and selling of the drug products herein identified, at all times relevant to Plaintiffs and

19  were authorized to and did conduct business within the state of California.

20         34.    Plaintiffs allege that the corporate form of the defendant corporations,

21  JOHNSON & JOHNSON and/or CENTOCOR, INC. and/or ABBOTT LABORATORIES and/or

22  SMITHKLINE BEECHAM d/b/a GLAXOSMITHKLINE and/or  TEVA

23  PHARMACEUTICALS USA and/or GATE PHARMACEUTICALS, a division of TEVA

24  PHARMACEUTICALS, USA and/or PAR PHARMACEUTICALS and/or MYLAN

25  LABORATORIES, INC. and/or BOEHRINGER INGELHEIM CORPORATION and/or

26  BOEHRINGER INGELHEIM ROXANE, INC., a subsidiary of BOEHRINGER INGELHEIM

27  CORPORATION and/or ROXANE LABORATORIES, INC., a subsidiary of BOEHRINGER

28  INGELHEIM CORPORATION and DOES 1 through 150, was a sham and should be disregarded

823343.3  - 10 -

COMPLAINT FOR DAMAGES

1   because their corporate form was a mere shell, instrumentality, and conduit used as an unfair

2   device to achieve an inequitable result and adherence to the fiction of the separate existence of the

3   corporations would sanction a fraud or promote an injustice.  Particularly, the corporate fiction

4   has been used by the defendant corporations as a sham to perpetrate a fraud for the direct personal

5   benefit of JOHNSON & JOHNSON and/or CENTOCOR, INC. and/or ABBOTT

6   LABORATORIES and/or SMITHKLINE BEECHAM d/b/a GLAXOSMITHKLINE and/or

7   TEVA PHARMACEUTICALS USA and/or GATE PHARMACEUTICALS, a division of TEVA

8   PHARMACEUTICALS, USA and/or PAR PHARMACEUTICALS and/or MYLAN

9   LABORATORIES, INC. and/or BOEHRINGER INGELHEIM CORPORATION and/or

10   BOEHRINGER INGELHEIM ROXANE, INC., a subsidiary of BOEHRINGER INGELHEIM

11   CORPORATION and/or ROXANE LABORATORIES, INC., a subsidiary of BOEHRINGER

12   INGELHEIM CORPORATION and DOES 1 through 150.

13          35.     Plaintiffs allege and will show that each of the defendant corporations was

14   owned, managed, and operated as the alter ego of the other and each is the alter ego for the other

15   with respect to the ownership, management, and operation of the operations and facilities

16   described above and the wrongful conduct which is the subject of this action.  All of the wholly-

17   owned subsidiaries were organized and operated as a mere shell, instrumentality, and conduit of

18   the parent corporate defendant.  There was such unity between the parent corporation and all of

19   the wholly-owned subsidiaries that any individuality or separateness of the subsidiaries never

20   existed or ceased to exist because of the unity of the interest and ownership between subsidiary

21   and parent corporations.

22          36.     The following facts regarding the operations of the corporate Defendants

23   support disregard of the corporate fiction:  (1) corporate formalities for all of the wholly-owned

24   subsidiaries were ignored and were not observed; (2) property was not kept separate and apart

25   between the parent corporation and the wholly-owned subsidiaries, which made direct deposits

26   into bank accounts controlled by the parent corporation on a regular basis that were consolidated

27   into the parent's deposit accounts; (3) the parent at all times maintained 100% financial interest in

28   all subsidiaries and maintained control over the subsidiaries on an operational basis both by

823343.3                                    - 11 -

1 | appointing the chief operation officer of each subsidiary and by top\down management; (4) the

2 | subsidiaries are used or established for the business purposes of the parent, and are the means by

3 | which the parent corporation conducted its business; and (5) the subsidiary facilities were not

4 | reasonably capitalized in light of the nature and risk of their business.

5 |       37.    Additionally, Plaintiffs allege that at all relevant times, the defendant

6 | corporations have operated as a single business enterprise to achieve a common business purpose.

7 | Defendant parent corporations and their wholly-owned subsidiaries were not operated as separate

8 | and individual entities, but rather integrated and commingled their resources to achieve a

9 | common business purpose and conducted their operations as follows:  (1) a single and common

10 | board of directors and the same members existed between the parent and subsidiaries; (2) the

11 | same centralized and consolidated accounting and financial reporting was used by both the parent

12 | and the subsidiaries for both internal purposes and external purposes such as for the Internal

13 | Revenue Services and annual financial reports; (3) the parent corporation paid the wages of all

14 | employees, agents, and representatives of the subsidiary facilities; (4) there was a common

15 | business name used throughout the parent and subsidiaries—all subsidiaries had a version of the

16 | parent corporations name in their names; (5) there were many "corporate" departments at the

17 | subsidiary level that rendered services on behalf of the parent Corporation; and (6) the parent

18 | corporations' capital and credit lines are and were used to fund and operate the subsidiaries were

19 | solely that of the parent.

20 |       38.    All of the subsidiaries of the parent corporations were established simply as

21 | shells, instrumentalities, and conduits through which the parent conducted its business, and

22 | therefore, the corporate fiction must be disregarded to prevent fraud or injustice.  Each constituent

23 | corporation may be held liable for the obligations incurred by the other component entities since

24 | these Defendants operated as a single business enterprise to achieve a common business purpose.

25 |       39.    The parent corporation intentionally operated all subsidiaries in a manner

26 | that left the subsidiaries without assets sufficient to satisfy the claims of the Plaintiffs, and other

27 | claimants by taking complete control and possession of the subsidiaries' revenues and receivables

28 | as soon as they were received or accrued.  All monies received as proceeds in the sales of

823343.3

- 12 -

COMPLAINT FOR DAMAGES

1    products by the subsidiary corporation were maintained and received by the parent corporation to

2    fund its own operations and were not maintained at the subsidiary level.

3         40.    The true names, capacities, and\or relationships, whether individual,

4    corporate, joint venture, partnership, employee/employer, agent/principal, or otherwise, of

5    DOES 1 through 150, inclusive, and each of them, are and were unknown to the Plaintiffs, at the

6    time of filing of this complaint and Plaintiffs, therefore, sue said Defendants, and each of them,

7    by said fictitious names and will ask leave of the court to amend this complaint to show the true

8    names, capacities, and\or relationships when the same have been ascertained and, therefore,

9    alleges that all of said fictitiously-named Defendants were the principals, agents, joint ventures,

10   co-conspirators, employers, employees, and\or partners of each and the other and as such are

11   either joint tortfeasors and/or jointly and severally liable and legally responsible in some manner

12   for the events and happenings herein, and proximately caused the injuries and damages to

13   Plaintiffs and each of them, as set forth herein.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

15        41.    Plaintiff, MAXX WENDELL, deceased, was diagnosed with hepatosplenic

16   T-cell lymphoma in mid-July, 2007 and died from his disease in December, 2007. From the time

17   of his diagnosis until his death, he was required to undergo lengthy and painful examinations,

18   treatments, testing and other diagnostic and therapeutic modalities in an ultimately unsuccessful

19   effort to cure or alleviate his disease.

20        42.    Plaintiffs STEPHEN and LISA WENDELL, the natural parents of MAXX

21   WENDELL, deceased, incurred substantial economic damages in a effort to obtain a cure for

22   their son or alleviate his suffering and otherwise sustained damages compensable under the laws

23   of this State resulting from their son's injuries and ultimate death.

24        43.    Plaintiffs allege that Defendants and each of them knew, or should have

25   known, that their intentional, knowing, and willful failure to properly warn Plaintiffs of the

26   adverse side effects known or knowable by Defendants to be associated with the use of their

27   drugs singly or in combination resulted in MAXX WENDELL being exposed to a dangerous and

28   defective product(s) which caused him seriously bodily injury from which he ultimately died.

823343.3                              - 13 -

# THE DRUGS

**I.     REMICADE®**

44.     Remicade® is a chimeric IgG1x monoclonal antibody which neutralizes the biological activity of tumor necrosis factor alpha (TNFα) by preferentially binding with TNFα receptors thereby inhibiting TNFα from binding with its receptors.  Elevated concentrations of TNFα have been found in involved tissues and fluids of patients with autoimmune disorders like rheumatoid arthritis, Crohn's disease, ulcerative colitis, ankylosing spondylitis, psoriatic arthritis and plaque psoriasis.  The drug was first approved by the federal Food and Drug Administration in 1998 for

>           a.     in combination with methotrexate, for reducing the signs and symptoms and inhibiting the progression of structural damage in patients with moderately to severely active rheumatoid arthritis who have had an inadequate response to methotrexate;

>           b.     the reduction in signs and symptoms of Crohn's disease in patients with moderately to severely active Crohn's disease who have had an inadequate response to conventional therapy; and

>           c.     the reduction in the number of draining enterocutaneous fistulas in patients with fistualizing Crohn's disease.

45.     At the time of its approval, the safety and efficacy of Remicade® in patients with juvenile rheumatoid arthritis and pediatric patients with Crohn's disease had not been established.  Moreover, at the time of its approval, the safety and efficacy of Remicade® therapy for the treatment of Crohn's disease beyond a single dose had not been established nor had the safety and efficacy of Remicade® therapy in the treatment of fistualizing Crohn's disease beyond three doses been established.

46.     In or about September, 2005, Remicade® received an additional indication for treatment of moderately to severely active ulcerative colitis in adults based upon a 30 week study in which the treatment group received a 5 mg/kg or 10 mg/kg dose at weeks 0, 2, 6, 14 and 22.  The safety and efficacy of the drug in the treatment of patients with juvenile rheumatoid arthritis and pediatric Crohn's disease, however, was still not established.

COMPLAINT FOR DAMAGES

47.     In February, 2005 Thayu, *et al.* reported a case of hepatosplenic T-cell lymphoma in an adolescent patient after therapy with an immunomodulator (mercaptopurine) and infliximab in the Journal of Pediatric Gastroenterology.

48.     In or about May, 2006, the FDA approved an additional indication for Remicade® for the treatment of active pediatric Crohn's disease based upon 54 week-long open-label clinical trial involving 112 children between the ages of 6 and 17 with moderately to severely active Crohn's disease and an inadequate response to conventional therapies.  All patients in the study received doses of 5 mg/kg in weeks 0, 2 and 6.  At week ten, 103 patients were randomized to a maintenance regimen of 5 mg/kg given at either 8 or 12 week intervals. For admission to this clinical trial, the patients were also required to be on a stable dose of 6-mercaptopurine, azathioprine or methotrexate.  The safety or effectiveness of longer term use (> 1 year) of Remicade® for pediatric Crohn's disease nor the safety and effectiveness of the use of Remicade® use at all for the treatment of pediatric ulcerative colitis had not been established.

49.     At the time of approval, the FDA also required the addition of a black box warning to the label to report six (6) post-marketing cases of hepatosplenic T-cell lymphoma in pediatric patients or young adults taking Remicade® concomitantly with either azathioprine or mercaptopurine for Crohn's disease.  Exposure was between 1 or 2 infusions up to four years of treatment.  Five of the six cases the patients were between the ages of 12 and 19 and four of the cases were male.

## II.     HUMIRA®

50.     Humira®, like Remicade®, is a TNF blocker described as a recombinant human IgG1 monoclonal antibody specific for human tumor necrosis factor.  According to its label, it specifically binds to TNFα and blocks the p55 and p75 cell surface TNF receptors.

51.     Humira® was approved by the FDA in 2002 for reducing signs and symptoms and inhibiting the progression of structural damage in adult patients with moderately to severely active rheumatoid arthritis who have had an inadequate response to one or more disease-modifying anti-rheumatic drugs.

1    52.    It was not until late February, 2007 that Humira® received an indication for

2    the treatment of Crohn's disease.

3    53.    While the Humira® label noted that "in the controlled portions of clinical

4    trials of all the TNF-blocking agents, more cases of lymphoma have been observed among

5    patients receiving TNF blockers compared to control patients," and that the observed rate when

6    the controlled and uncontrolled open-label portions of the clinical trials were combined was as

7    much as 3.5 fold higher than expected in the general population, it also states that "rates in

8    clinical trials for Humira® cannot be compared to rates of clinical trials of other TNF blockers and

9    may not predict the rates observed in a broader patient population."

10    54.    In June, 2008, the FDA issued an "Early Communication about an

11    Ongoing Safety Review of Tumor Necrosis Factor (TNF) Blockers (marketed as Remicade,

12    Embrel, Humira, and Cimzia)." In that "Early Communication" the FDA reported that it was

13    "investigating approximately 30 reports of cancer in children and young adults . . . [which] were

14    submitted to FDA's Adverse Event Reporting System over a ten-year period beginning in 1998

15    after approval of the first TNF blocker and extending through April 29, 2008." According to the

16    FDA, "[t]hese reports described cancer occurring in young adults who began taking TNF blockers

17    (along with other immuno-suppressive medicines such as methotrexate, azathiopine or

18    6-mercaptopurine), when they were ages 18 or less, to treat Juvenile Idiopathic Arthritis (JIA),

19    Crohn's disease or other diseases."

20    **III.    MERCAPTOPURINE (Purinethol®)**

21    55.    Mercaptopurine (also known as 6-mercaptopurine or 6-MP) is a purine

22    analog which interferes with nucleic acid biosynthesis and has been found to be active against

23    human leukemias. Its only FDA-approved indication is for remission induction and maintenance

24    therapy of acute lymphatic leukemia.

25    56.    For many years—at least since the 1990's if not earlier—mercaptopurine

26    has been commonly used off-label in the treatment of autoimmune disorders like Crohn's disease,

27    inflammatory bowel disease (IBD) and rheumatoid arthritis, among others. Such use was

28    common and known to the Defendants herein.

823343.3

- 16 -

57.     Following the approval of Remicade® in 1998 for treatment of rheumatoid arthritis and Crohn's disease in adults, it became common practice to prescribe mercaptopurine in combination concomitantly with TNF-blockers like Remicade® or Humira® in the treatment of autoimmune disorders.  Such use—which was not approved by the FDA—was not only known to Defendants herein but encouraged and/or promoted and/or fostered and/or otherwise enabled by Defendants herein and each of them without adequate testing on the safety and/or efficacy of such combination use or in the pediatric or young adult populations.

## MAXX WENDELL'S HISTORY

58.     Maxx Wendell was born on August 20, 1986 in California.

59.     In or about September of 1998 at the age of 12, he was diagnosed with inflammatory bowel disease (IBD) and ulcerative colitis (UC).  Initially he was treated with a course of mercaptopurine (6-MP) and prednisone, a steroid.

60.     In or about May, 2002 his treating gastroenterologist recommended adding Remicade® to the regimen with a course of steroid weaning.

61.     In or about June or July of 2002, Maxx Wendell received his first dose of Remicade®.  His treating gastroenterologist continued him on 6-MP while attempting to wean him from steroids.

62.     He continued to receive Remicade® at various intervals through 2006, all the while continuing to take 6-MP.

63.     In or about November, 2006 his treatment regimen was modified by the inclusion of Humira® in place of Remicade®.  He continued to take 6-MP as well.  He received at least 5 doses of Humira® between November, 2006 and June, 2007.

64.     In mid-July, 2007 Maxx Wendell was diagnosed with hepatosplenic T-cell lymphoma.

65.     Despite aggressive chemotherapy and other treatments, he succumbed to his disease five months later on December 19, 2007.

66.     Despite Defendants' foregoing knowledge of the potential damage to the health and welfare of the users of their drugs when used either singly or in combination,

1    Defendants willingly, knowingly and intentionally failed to timely and adequately warn any and

2    all American physicians who prescribed Defendants' products, about the risk of harm associated

3    with the use of Defendants' products when used either singly or in combination.

4           67.     Had the labels on Defendants' products properly warned about the risk of

5    harm associated with the use of Defendants' products when used either singly or in combination,

6    MAXX WENDELL and/or his parents Plaintiffs STEPHEN and LISA WENDELL and any other

7    reasonable persons in their position, would have been allowed the opportunity to provide his

8    informed consent to use or not to use the product, in the manner in which it was prescribed and

9    administered. MAXX WENDELL would not have suffered the development of hepatosplenic

10    T-cell lymphoma and the emotional, physical and financial injuries he and his parents Plaintiffs

11    STEPHEN WENDELL and LISA WENDELL suffered, but for the lack of proper and adequate

12    warnings provided by Defendants in the United States.

13           68.     Defendants, and each of them, knew, or should have known, from multiple

14    adverse event reports and other sources that their products were unreasonably dangerous.

15    Defendants, and each of them, failed to, *inter alia*, (1) provide to any and all persons who

16    prescribed Defendants' products, including but not limited to any and all physicians, or affix to

17    the product a proper and adequate warning of the safety risks associated with the use of

18    Defendants' products either singly or in combination, and (2) to implement a monitoring scheme

19    intended to warn of or avoid the adverse effects of these medications when used singly or in

20    combination, to the product user.

21                        **FRAUDULENT CONCEALMENT**

22           69.     Any applicable statutes of limitations have been tolled by the Defendants=

23    knowing and active concealment and denial of the facts as alleged herein by Plaintiffs. Plaintiff

24    has been misled and denied access to vital information essential to the pursuit of these claims,

25    without any fault or lack of diligence on her part. Plaintiff could not reasonably have discovered

26    the dangerous nature of and unreasonable adverse side effects associated with the use of the use

27    of Defendants' drug products either singly or in combination, prior to the filing of this Complaint,

28    at the earliest.

70.     Defendants were and are under a continuing duty to disclose the true character, quality, and nature of their drug products either when used singly or in combination, including an accurate account of all risk and all benefits.  Because of their active concealment of the true character, quality, nature and risks of their drug products when used either singly or in combination, Defendants are estopped from relying on any statute of limitations defense as a bar to Plaintiff's claim.

**FIRST CAUSE OF ACTION**
**Fraud And Deceit—Fraudulent Misrepresentation And Intentional Concealment**
**(Against All Defendants)**

71.     Plaintiffs incorporate by reference and hereby re-allege paragraphs 1 through 70 as though fully set forth here and further alleges as follows:

72.     At all times during which Defendants, JOHNSON & JOHNSON and/or CENTOCOR, INC. and/or ABBOTT LABORATORIES and/or SMITHKLINE BEECHAM d/b/a GLAXOSMITHKLINE and/or  TEVA PHARMACEUTICALS USA and/or GATE PHARMACEUTICALS, a division of TEVA PHARMACEUTICALS, USA and/or PAR PHARMACEUTICALS and/or MYLAN LABORATORIES, INC. and/or BOEHRINGER INGELHEIM CORPORATION and/or BOEHRINGER INGELHEIM ROXANE, INC., a subsidiary of BOEHRINGER INGELHEIM CORPORATION and/or ROXANE LABORATORIES, INC., a subsidiary of BOEHRINGER INGELHEIM CORPORATION and DOES 1 through 150 and each of them tested, produced, formulated, manufactured, sold, distributed, marketed, processed, and supplied their drug products and up to the present, Defendants, and each of them, knowingly, intentionally, willfully, and purposefully deceived Plaintiffs by (1) making false and fraudulent misrepresentations to Plaintiffs and the general public including, but not limited to, MAXX WENDELL'S treating physicians, and other American consumers of their drug products, that their drugs used either singly or in combination were safe, fit, and effective for human use; and (2) intentionally concealed from Plaintiffs and the American public and medical community, the true facts known by Defendants concerning the risks of harm associated with the use of their drugs either singly or in combination.

823343.3                                          - 19 -

COMPLAINT FOR DAMAGES

1    73. At all times relevant to this action, Defendants, JOHNSON & JOHNSON

2 and/or CENTOCOR, INC. and/or ABBOTT LABORATORIES and/or SMITHKLINE

3 BEECHAM d/b/a GLAXOSMITHKLINE and/or  TEVA PHARMACEUTICALS USA and/or

4 GATE PHARMACEUTICALS, a division of TEVA PHARMACEUTICALS, USA and/or PAR

5 PHARMACEUTICALS and/or MYLAN LABORATORIES, INC. and/or BOEHRINGER

6 INGELHEIM CORPORATION and/or BOEHRINGER INGELHEIM ROXANE, INC., a

7 subsidiary of BOEHRINGER INGELHEIM CORPORATION and/or ROXANE

8 LABORATORIES, INC., a subsidiary of BOEHRINGER INGELHEIM CORPORATION and

9 DOES 1 through 150, and each of them, knew that their representations regarding the safety and

10 efficacy of their drug products when used either singly or in combination were in fact false and

11 inaccurate.  The true and accurate facts knowingly and intentionally concealed by Defendants,

12 and each of them were, inter alia, the use of their products either singly or in combination for the

13 treatment of various autoimmune disorders was directly associated with and/or known to cause

14 cancers, including and particularly hepatosplenic T-cell lymphoma.  This information regarding

15 the health risks of HRT was known or knowable by Defendants, and each of them, yet they

16 knowingly and intentionally concealed this material information from the Plaintiffs herein, the

17 American medical community, and other patients who were prescribed and used the drug

18 products manufactured, produced, marketed and sold by Defendants, and each of them, either

19 singly or in combination for the treatment of various autoimmune disorders.

20    74. At all times during which Defendants, and each of them, made the above

21 mentioned fraudulent misrepresentations to and intentional concealment from Plaintiffs and

22 MAXX WENDELL'S treating physicians, Defendants, and each of them, knew their fraudulent

23 misrepresentations were false and inaccurate when made.  Defendants, and each of them, made

24 concealed this information and made these fraudulent misrepresentations with the specific intent

25 to deceive Plaintiffs and induce Plaintiffs to choose their drugs over other safer alternative

26 medical treatments for MAXX WENDELL's condition.

27    75. Plaintiffs would not have agreed to the use of Defendants' drug products

28 either singly or in combination if they were aware and had been informed of the true facts and

823343.3

- 20 -

COMPLAINT FOR DAMAGES

1   information concerning the risks of serious harm which were known or should have been known

2   by Defendants, and each of them, to be associated with the use of their drug products, either

3   singly or in combination, and the causal nexus between the use of Defendants' products, either

4   singly or in combination and the aforementioned permanent medical conditions and disorders

5   from which Plaintiff, MAXX WENDELL ultimately suffered.

6          76.     Plaintiffs and the prescribing treating physicians herein justifiably and

7   reasonably relied upon the fraudulent misrepresentations and intentional concealment by

8   Defendants, and each of them, and their agents and representatives.  Plaintiffs, and their treating

9   and prescribing doctors' reliance upon Defendants' fraudulent misrepresentations and intentional

10  concealment was reasonable, as Plaintiffs, and these physicians did not, at all times during which

11  plaintiff was prescribed and ingested Defendants' drug products, have the knowledge,

12  information, or awareness of the facts regarding the adverse health effects of the use of

13  Defendants' drug products either singly or in combination, necessary to properly evaluate

14  whether these drugs were safe for use, either singly or in combination in the manner utilized

15  herein.

16         77.     At all times during which MAXX WENDELL was prescribed and ingested

17  Defendants' drug products,  Defendants, and each of them, conducted sales and marketing

18  campaigns through Defendants' sales agents, to physicians, variously through written pamphlets,

19  ostensible education seminars for prescribing physicians, and Defendants= internet websites to

20  promote the sale, distribution and use of their drug products either singly or in combination in the

21  manner and for the purpose utilized herein, with the intent to willfully and intentionally deceive

22  Plaintiffs, MAXX WENDELL'S treating physicians, and the general consuming public as to the

23  health risks and adverse side effects connected to the use of their drug products either singly or in

24  combination.  Defendants= fraudulent representations and intentional concealment were made

25  directly by Defendants herein to Plaintiffs and/or MAXX WENDELL'S treating and prescribing

26  physicians via Defendants' sales agents' written materials and brochures, internet website

27  advertising, publications, literature, product labels, other written materials, and apparent

28  educational seminars regarding the use of these products either singly or in combination and in

1   the manner utilized herein, directed to Plaintiffs and the relevant treating and prescribing

2   physicians herein.

3         78.    Defendants' fraudulent misrepresentations intentionally were made and

4   conducted by Defendants' agents and representatives knowingly and willingly and with the intent

5   to induce MAXX WENDELL and his physicians to use, consume, and ingest and prescribe for

6   medical treatment of MAXX WENDELL's condition.

7         79.    As a direct and proximate result of Defendants' and their agents and

8   representatives, fraudulent and misrepresentations, intentional concealment, and deceitful

9   conduct, Plaintiff MAXX WENDELL was prescribed and ingested Defendants' drug product(s)

10  which caused or substantially contributed to his injuries and ultimate death.

## SECOND CAUSE OF ACTION
### Negligence, Recklessness And Gross Negligence

### (Against All Defendants)

14        80.    Plaintiffs incorporate by reference and hereby re-alleges paragraphs 1

15  through 79 as though fully set forth here and further alleges as follows:

16        81.    Defendants, and each of them, as pharmaceutical manufacturers,

17  distributors, and suppliers, had a duty to warn of adverse drug reactions of which they knew, or

18  had reason to know or were otherwise knowable.  Defendants, and all of them, knew, or should

19  have known, the following:

20        a.    That Defendants' drug product(s) either when used singly or in

21  combination for the treatment of various autoimmune disorders failed to adequately warn of the

22  danger of cancer and in particular, hepatosplenic T-cell lymphoma;

23        b.    That patients like MAXX WENDELL and other similarly situated

24  users of Defendants' products used either singly or in combination were at significant risk of

25  suffering cancer.

26        82.    In light of their knowledge of the dangers and risks associated with the use

27  of their products and drug formulations, either singly or in combination, Defendants, and each of

28  them, had a duty to:  (a) timely and adequately warn any and all persons who prescribed

823343.3                              - 22 -

1   Defendants' product either singly or in combination, including but not limited to, any and all

2   physicians, of the known and/or knowable, and/or suspected risks of, inter alia, cancers from the

3   use of their products when used either singly or in combination; and (b) timely implement a safer,

4   alternative design for its products, *i.e.*, to incorporate a warning prevention system within the

5   product and/or to formulate a safer drug combination.

6         83.    Defendants, and each of them, committed numerous acts of negligence in

7   manufacturing, assembling, packaging, labeling, marketing, distributing, testing and monitoring

8   of their drug products, including, but not limited to:

9         a.    failing to timely and/or adequately warn any and all persons who

10   prescribed Defendants' product, including but not limited to, any and all physicians, of the actual

11   and known risk of harm inherent in the use of Defendants' product;

12         b.    failing timely to implement a safer alternative product;

13         c.    failing to conduct proper testing of their products or conduct

14   adequate post-marketing surveillance to discover the risks associated with the use of their drugs

15   either singly or in combination;

16         d.    promoting use of their products in a vigorous, negligent, and

17   fraudulent manner despite their knowledge of their products' dangerousness when used either

18   singly or in combination, due to its failure to warn of adverse side effects.

19         84.    As a direct, foreseeable and proximate result of the negligence of

20   Defendants, and each of them, as hereinbefore set forth Plaintiffs suffered damages compensable

21   under the laws of this State.

22   **THIRD CAUSE OF ACTION**<br>**Negligent Misrepresentation**

23

24   **(Against All Defendants)**

25         85.    Plaintiffs incorporate by reference and hereby re-allege paragraphs 1

26   through 84 as though fully set forth here and further alleges as follows:

27         86.    At all times relevant to this action, Defendants, and each of them, knew, or

28   should have known, that their representations of the safety and efficacy of their products were in

823343.3

- 23 -

COMPLAINT FOR DAMAGES

1    fact false and inaccurate.  The true and accurate facts, falsely and negligently concealed by

2    Defendants, were that use of Defendants' products either singly or in combination, created a

3    serious risk of harm to patients like MAXX WENDELL.  Defendants, and each of them, falsely

4    and negligently represented that their products were safe to prescribe, use, consume and ingest,

5    and that their product created no serious risk of harm.  This falsity and inaccuracy of this

6    information was, or should have been, known to Defendants and was negligently misrepresented

7    to and withheld from the medical profession and the foreseeable users of their drug products.

8           87.    At all times during which Defendants made the above mentioned

9    misrepresentations, including but not limited to the representation that Defendants' product was

10   safe to use, and the negligent concealment of the fact that use of Defendants' product created a

11   serious risk of harm to patients like MAXX WENDELL, Defendants, and each of them, knew, or

12   should have known, and had the ability and means to ascertain, that the misrepresentations were

13   false and inaccurate.

14          88.    Plaintiffs had no knowledge or awareness of the falsity of Defendants'

15   representations and believed Defendants' products to be safe for use in the manner in which they

16   were used herein.

17          89.    Plaintiffs reasonably relied upon Defendants' misrepresentations and were

18   induced to and did use and agreed to be prescribed and ingest Defendants' products.  Plaintiffs

19   would not have purchased, ingested and consumed Defendants' product if they had known the

20   true facts concerning the causal nexus between the use of Defendants' product and the

21   aforementioned permanent injuries suffered by MAXX WENDELL.

22          90.    Plaintiffs justifiably and reasonably relied upon Defendants'

23   misrepresentations as Defendants were in a position of having superior knowledge regarding the

24   safety and efficacy of their drug products, in that Defendants held themselves out to have

25   experience and particular expertise in the field of manufacturing, testing, packaging, labeling,

26   distributing, selling and/or prescribing medications and knew that the medical community needed

27   and was seeking safe and effective treatments.  Plaintiffs' reliance upon Defendants'

28   misrepresentations was reasonable as Plaintiffs did not, at all times relevant to this action, have

1  the knowledge or expertise necessary to independently evaluate whether or not the medications

2  prescribed for MAXX WENDELL and the manner in which said medications were being

3  administered were, in fact, safe.

4         91.    As a foreseeable, direct and proximate result of the acts, conduct and

5  omissions of Defendants and each of them, as hereinbefore set forth, Plaintiffs, agreed to the

6  prescription and use Defendants' products and thereby suffered injuries compensable under the

7  laws of this State.

8  **FOURTH CAUSE OF ACTION**
   **Negligence**

9

10  **(Against All Defendants)**

11         92.    Plaintiffs incorporate by reference and hereby re-allege paragraphs 1

12  through 91 as though fully set forth here and further alleges as follows:

13         93.    At all times relevant hereto, the officers and/or directors of the corporate

14  Defendants, and each of them named herein, participated in, authorized and/or directed the

15  manufacture, production, packaging, labeling, distribution, promotion, sale or other placement in

16  the stream of commerce of the aforementioned products when they knew or with the exercise of

17  reasonably care should have known, of the hazards and dangerous propensities of said products

18  and thereby actively participated in the tortious conduct which resulted in the injuries sustained

19  by Plaintiffs as hereinbefore described.

20         94.    At all times herein mentioned, Defendants, and each of them, had a duty to

21  exercise reasonable care in the manufacture, production, packaging, labeling, distribution,

22  promotion, sale or other placement of their products into the stream of commerce, including a

23  duty to assure that their drugs did not place patients at unreasonable risk of dangerous side

24  effects, such as the development of cancer and/or that the drugs contained adequate warnings of

25  the risks of their use.  Defendants, and each of them, failed to exercise ordinary care in the

26  manufacture, production, labeling, packaging, sale, testing, and/or distribution into interstate

27  commerce of their products, in that Defendants, and each of them, knew or should have known

28  that use of their drugs, either singly or in combination, presented and created a high risk of

823343.3

- 25 -

COMPLAINT FOR DAMAGES

1 unreasonable and serious, dangerous side effects, some of which were irreversible and potentially
2 fatal, such as cancer.

3     95.    Defendants, and each of them, negligently and carelessly manufactured,
4 designed, formulated, compounded, tested, produced, processed, assembled, inspected,
5 researched, distributed, marketed, labeled, packaged, prepared for use, sold and failed to
6 adequately test, research and warn any and all persons who prescribed Defendants' product,
7 including but not limited to, any and all physicians and their patients, of the risks and dangers of
8 the use of Defendants' products either singly or in combination. This negligence and carelessness
9 involves, *inter alia*:

10     a.    Failure to use due care in manufacturing these pharmaceutical
11 agents so as to avoid the aforementioned risks to individuals when these agents were being
12 prescribed, sold, consumed, ingested and used;

13     b.    Failure to accompany their products with proper warnings
14 regarding all possible adverse side effects associated with use, consumption, and ingestion of this
15 pharmaceutical agents and the comparative severity and duration of such adverse effects; the
16 warnings given, if any, did not accurately and truthfully reflect the risks of developing or the
17 symptoms, scope or severity of side effects;

18     c.    Failure to conduct adequate and sufficient pre clinical and clinical
19 testing and/or post-market surveillance to determine the safety and efficacy of their drug products
20 as used;

21     d.    Failure to provide adequate training to medical care providers for
22 the appropriate use and prescribing of their drugs;

23     e.    Failure otherwise to exercise due care under the circumstances or
24 act as a reasonable product manufacturer and in particular a pharmaceutical manufacturer would
25 under the circumstances.

26     96.    Defendants, and each of them, knew or should have known that consumers
27 and patients such as Plaintiffs herein foreseeably would suffer serious harm and injury as a result
28 of the failure of Defendants, and each of them, to exercise ordinary care as hereinbefore set forth.

823343.3           - 26 -
COMPLAINT FOR DAMAGES

97.     As a foreseeable, direct, proximate and legal result of the negligence, carelessness, and other wrongdoing or tortious actions or inactions of Defendants, and each of them, Plaintiff MAXX WENDELL sustained permanent and devastating physical injuries, from which he ultimately died.  These injuries caused extensive pain, suffering and emotional distress not only to MAXX WENDELL but his parents who were also caused to expend substantial sums of money for medical, hospital, and related care in an unsuccessful effort to cure or alleviate their son's disease and suffering.  Plaintiffs also sustained general and other damages compensable under the laws of this State.

98.     As a foreseeable, direct, proximate and legal result of the negligence, carelessness and other wrongdoing and tortuous actions or inactions of Defendants, and each of them, as described herein, Plaintiff MAXX WENDELL, was injured in his health, strength, and activity and suffered serious injuries to his body and mind, including death.  All of said injuries caused MAXX WENDELL and his parents intense anxiety, distress, fear, pain, suffering and distress secondary to his permanent injury and damages.  These injuries have generally damaged Plaintiffs in a sum above the court's jurisdictional minimum.

99.     As a foreseeable, direct, proximate and legal result of the negligence, carelessness and other wrongdoing and tortious actions or inactions of Defendants, and each of them, MAXX WENDELL sustained loss of earnings and earning capacity in the future.  The exact amount is presently unknown to Plaintiffs at this time.

100.     As a foreseeable, direct, proximate and legal result of the negligence, carelessness and other wrongdoing and tortious actions or inactions of Defendants, and each of them, MAXX WENDELL required reasonable and necessary health care, attention and services and he and/or his parents, Plaintiffs STEPHEN and LISA WENDELL did incur medical, incidental and service expenses thereupon for which they seek recovery.

101.     The conduct of Defendants, and each of them, in formulating, licensing, manufacturing, assembling, packaging, labeling, warning, marketing, advertising, promotion, distribution, and sale of the products, included but is not limited to:

a.      Marketing and aggressively promoting their products for non-indicated uses in  non-indicated fashions and in non-indicated patient groups, either knowing the high risks posed by such use or failing to know such risks because of their failure to conduct sufficient pre-clinical or clinical testing or perform adequate post marketing surveillance;

b.      Failing to provide complete truthful, and accurate warnings, literature, instructions, or training to health care professionals indicating the proper use of their products either singly or in combination;

c.      Failing to provide and include adequate warnings with their products being used either singly or in combination that would alert physicians and their patients of the potential risks and the nature, scope, severity and duration of any serious side effects of their drugs either when used singly or in combination, particularly, the risk of permanent and potentially fatal cancers;

d.      Continuing to promote the efficacy of safety of their drugs for use either singly or individually while providing no warning or inadequate warnings, thus downplaying the risks, even after Defendants, and each of them, knew of the risks, including development of cancers;

e.      Delaying warnings of, and then failing to provide adequate, accurate, and truthful warnings about permanent cancers arising from the use of their drugs, either singly or in combination, which may have dissuaded medical providers from prescribing the drugs so freely and depriving medical providers of the ability to understand and measure the true risks against the benefits of prescribing these medications either singly or in combination in  the manner and for the purposes as herein, was fraudulent, conscious, knowing misconduct, intended to insure that Defendants, and each of them, continued to enjoy the large profits Defendants, realized from the sales of their drugs from the manner in and use to which the drugs were put, which profits Defendants, and each of them, knew would cease if Defendants, and each of them, warned or otherwise adequately informed doctors and their patients of the dangers of their drugs when used either singly or in combination in the manner in and use to which the drugs were put. The conduct of Defendants, and each of them, was undertaken recklessly and with conscious

COMPLAINT FOR DAMAGES

1   disregard for the safety of consumers such as Plaintiff, MAXX WENDELL, such as to constitute

2   despicable conduct, oppression, fraud and malice, and such conduct was at all times relevantly

3   ratified by the corporate Defendants, and each of them, thereby entitling Plaintiffs to punitive

4   damages in an amount appropriate to punish and make an example of Defendants.

### FIFTH CAUSE OF ACTION
#### Negligence Per Se

**(Against All Defendants)**

8       102.   Plaintiffs incorporate by reference and hereby re-allege paragraphs 1

9   through 101 as though fully set forth here and further allege as follows:

10       103.   Defendants, and each of them, have an obligation to not violate the law in

11   their acts and conduct.

12       104.   Defendants, and each of them, have violated the California Consumer

13   Protection Statutes and all related and other laws, statues, and regulations applicable to

14   Defendants' wrongful conduct.

15       105.   Plaintiffs as patients and/or purchasers and/or consumers of the drugs at

16   issue herein are within the class of persons the statutes described above are designed to protect.

17   Injury suffered as a result of and due to false advertising, misbranding, misleading labeling or

18   warnings, and promotion of unsafe products is the type of harm the above-cited statutes are

19   designed to prevent.

20       106.   Defendants, and each of them, are directly responsible to Plaintiffs for

21   Defendants' violations of the statutes described above under the doctrine of negligence *per se*.

22       107.   As a direct and legal result of the violations of the statutes described above,

23   Plaintiff MAXX WENDELL, suffered suffer serious injury and harm, ultimately resulting in his

24   death, and Plaintiffs have otherwise suffered economic loss, as alleged in this complaint and

25   otherwise sustained damages compensable under the laws of this State.

26

27

28

823343.3

- 29 -

COMPLAINT FOR DAMAGES

### SIXTH CAUSE OF ACTION
#### Strict Liability In Tort—Failure To Warn

#### (Against All Defendants)

108.    Plaintiffs incorporate by reference and hereby re-allege paragraphs 1 through 107 as though fully set forth here and further allege as follows:

109.    Defendants, and each of them, are the designers, manufacturers, testers, researchers, developers, compounders, packagers, labelers, distributors, suppliers and/or sellers of the pharmaceutical drug products hereinbefore set forth and/or were otherwise responsible for placing those drugs into the stream of commerce.

110.    The drugs designed, manufactured, tested, researched, developed, compounded, packaged, labeled, distributed, supplied and/or sold by Defendants, and each of them, were and are unaccompanied by proper and adequate warnings regarding their risks, including possible cancers, among others, associated with the use of their drugs either singly or in combination and the comparative severity and duration of the injuries which could result from such risks; the warnings given did not accurately, truthfully, or adequately reflect the risks or the symptoms, scope, and severity of the injuries which could result from such risks.

111.    Defendants, and each of them, failed to perform adequate pre-market or post-market testing of their drugs and their use by patients in the manner and for the purposes they were used herein which testing would have shown that the use of these drugs either singly or in combination posed significant risks, including but not limited to, development of serious and potentially fatal cancers. Defendants, and each of them, also failed to conduct proper post-market surveillance to determine the manner in and purposes for which their drugs were being used and the risks of such use. Defendants, and each of them, upon placing their products into the stream of commerce, had a duty to fully understand the risks posed by their drug products and to fully and properly warn of the risks posed by their drugs, which warnings were required to accurately and fully warn of the symptoms, scope, and severity of the risk and potential injuries associated with the use of their drugs either singly or in combination.

112. Defendants, and each of them, knew or should have known their products used, either singly or in combination, were and are dangerously defective products which pose unacceptable risks unknown and unknowable by the consuming public, including Plaintiffs.

113. Defendants, and each of them, not only failed to adequately warn the foreseeable users of their products but also failed to adequately warn any and all persons who prescribed Defendants' products, including but not limited to, any and all physicians, of the risks posed by that the use of their drugs, either singly or in combination.

114. The drug products manufactured and/or supplied by Defendants, and each them, were defective due to false and inadequate warnings because, after the manufacturers knew or should have known of risks, from their use either singly or in combination, they failed to provide adequate warnings to prescribers of the product or patients and continued to aggressively market, promote, distribute, and sell these dangerously defective products.

115. As a foreseeable, direct, proximate and legal result of the negligence, carelessness, and other wrongdoing or tortious actions or inactions of Defendants, and each of them, Plaintiff MAXX WENDELL sustained permanent and devastating physical injuries, from which he ultimately died. These injuries caused extensive pain, suffering and emotional distress not only to MAXX WENDELL but his parents who were also caused to expend substantial sums of money for medical, hospital, and related care in an unsuccessful effort to cure or alleviate their son's disease and suffering. Plaintiffs also sustained general and other damages compensable under the laws of this State.

116. As a foreseeable, direct, proximate and legal result of the negligence, carelessness and other wrongdoing and tortious actions or inactions of Defendants, and each of them, as described herein, Plaintiff MAXX WENDELL, was injured in his health, strength, and activity and suffered serious injuries to his body and mind, including death. All of said injuries caused MAXX WENDELL and his parents intense anxiety, distress, fear, pain, suffering and distress secondary to his permanent injury and damages. These injuries have generally damaged Plaintiffs in a sum above the court's jurisdictional minimum.

117.   As a foreseeable, direct, proximate and legal result of the negligence, carelessness and other wrongdoing and tortious actions or inactions of Defendants, and each of them, MAXX WENDELL sustained loss of earnings and earning capacity in the future.  The exact amount is presently unknown to Plaintiffs at this time.

118.   As a foreseeable, direct, proximate and legal result of the negligence, carelessness and other wrongdoing and tortious actions or inactions of Defendants, and each of them, MAXX WENDELL required reasonable and necessary health care, attention and services and he and/or his parents, Plaintiffs STEPHEN and LISA WENDELL did incur medical, incidental and service expenses thereupon for which they seek recovery.

## SEVENTH CAUSE OF ACTION
### Breach Of Express Warranty

### (Against All Defendants)

119.   Plaintiffs incorporate by reference and hereby re-allege paragraphs 1 through 118 as though fully set forth here and further allege as follows:

120.   At all times relevant hereto, Defendants, and each of them, expressly warranted by way of written literature, including, but not limited to product labeling, patient package inserts, articles in medical journals, advertising or other documents and/or promotional materials directed to Plaintiffs' physicians and/or Plaintiffs, by and through statements made by Defendants, and each of them, or their authorized agents or sales representative, orally and/or in publications package insert, or other written materials intended for physicians and/or their patients, that the aforementioned products were safe, effective, fit and proper for their intended use, through the course of that use by MAXX WENDELL and/or others similarly situated and/or the general public to whom it was prescribed, supplied or dispensed.

121.   Plaintiffs were prescribed and/or purchased and/or consumed and/or otherwise ingested the Defendants' drug products.  In so doing, Plaintiffs relied upon the skill, judgment, representation and the foregoing express written warranties of the Defendants and each of them. Said warranties and representations were false, misleading and inaccurate in that the aforementioned products were not safe and were unfit for the uses for which they were intended

823343.3

- 32 -

COMPLAINT FOR DAMAGES

1   or put with the knowledge and/or encouragement and/or approval of Defendants and each of

2   them.

3        122.   As a result of the breaches of express warranties by the Defendants, and

4   each of them, as hereinbefore set forth, Plaintiffs, after purchasing and/or consuming and/or

5   ingesting Defendants' subject drugs, suffered injuries and damages compensable under the laws

6   of this State as set forth herein.

7   **EIGHTH CAUSE OF ACTION**
    **Breach Of Implied Warranty**

8   **(Against All Defendants)**

9

10       123.   Plaintiffs incorporate by reference and hereby re-allege paragraphs 1

11  through 122 as though fully set forth here and further allege as follows:

12       124.   Prior to the time that the aforementioned products were used by Plaintiff,

13  MAXX WENDELL, Defendants, and each of them, impliedly warranted to Plaintiffs and/or

14  Plaintiff's physicians that said products were of merchantable quality and safe and fit for the use

15  for which they were intended or other known or foreseeable uses.

16       125.   Plaintiffs were and are unskilled in the research, design, and manufacture

17  of the aforementioned products and reasonably relied entirely on the skill, judgment and implied

18  warranties of the Defendants, and each of them, in being prescribed, purchasing, consuming and

19  ingesting the aforementioned products.

20       126.   The aforementioned products were neither safe for their intended, known

21  or foreseeable uses nor of merchantable quality, as warranted by Defendants, and each of them, in

22  that they had the potential for permanent injuries when put to their intended, known or

23  foreseeable uses and would cause such injuries to the foreseeable users of their products.

24       127.   As a result of the aforementioned breaches of the implied warranties by the

25  Defendants, and each of them, Plaintiffs, after being prescribed and/or after purchasing and/or

26  consuming and/or ingesting defendant's products suffered injuries and damages compensable

27  under the laws of this State as alleged herein.

28

823343.3

- 33 -

COMPLAINT FOR DAMAGES

### NINTH CAUSE OF ACTION
**Violation Of Business And Professions Code Section 17200, *Et Seq.***

**(Against All Defendants)**

128.   Plaintiffs incorporate by reference and hereby re-allege paragraphs 1 through 127 as though fully set forth here and further allege as follows:

129.   Plaintiffs bring this cause of action pursuant to California Business & Professions Code Section 17200, *et seq.*, for themselves, and not on behalf of the general public.

130.   California Business & Professions Code Section 17200 provides that unfair competition shall mean and include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ."

131.   At all times herein, Defendants, and each of them, engaged in a pattern of practice of advertising and marketing of their drug products as safe and effective medications, even though Defendants, and each of them, knew or should have known that the foreseeable use of the products either singly or in combination could cause serious adverse health effects.  The acts and practices of Defendants, and each of them, as described in this complaint constitute unlawful, unfair and fraudulent business acts or practices and were and are likely to mislead the Plaintiffs and, therefore, constitute unfair business practices within the meaning of Business & Professions Code Sections 17200, *et. seq.*  The conduct of Defendants, and each of them, involving untrue and misleading advertising as set forth in this complaint are incorporated by reference into this cause of action and constitute violations of Business & Professions Code Sections 17200, *et seq.*  This conduct includes, but is not limited to:

a.   Representing to Plaintiffs, and the general public, that said products and their use were safe, fit, and effective for human consumption, knowing that said representations were false, and concealing from Plaintiffs, and the general public, that said products had a serious propensity to cause injuries to foreseeable users;

b.   Purposely and affirmatively downplaying and understating the health hazards and risks known by Defendants, and each of them, to be associated with the foreseeable uses of their drugs either singly or in combination;

823343.3

- 34 -

COMPLAINT FOR DAMAGES

1     c. Issuing promotional literature which deceived potential users of

2 their drug products by relaying positive information regarding the medication and manipulating

3 information to indicate widespread acceptance of the products and medications among patients

4 like MAXX WENDELL, while downplaying the adverse, serious and permanent health effects

5 known or knowable by Defendants, and each of them, and concealing material relevant

6 information regarding the safety and efficacy of the products when put to their intended or

7 foreseeable uses.

8    132. These practices by Defendants, and each of them, constitute unlawful,

9 unfair and fraudulent business acts or practices within the meaning of California Business &

10 Professions Code Sections 17200, *et seq.*, as well as unfair, deceptive, untrue, and misleading

11 advertising also prohibited by California Business & Professions Code Sections 17200, *et seq.*

12    133. The unlawful, unfair and fraudulent business practices of Defendants, and

13 each of them, as described herein present a potential continuing threat to members of the public to

14 the extent that Defendants continue to engage in the conduct described herein.

15    134. As a result of their conduct described above, Defendants, and each of them,

16 have been and will continue to be unjustly enriched.  Specifically, Defendants, and each of them,

17 have been unjustly enriched by receipt of ill gotten gains from the prescription and sale said

18 products in California and throughout the United States, which sales occurred primarily as a result

19 of the acts and omissions of Defendants, and each of them, as described herein.

20    135. Because of the fraudulent misrepresentations made by Defendants, and

21 each of them, as detailed above, and the inherently unfair practice of committing a fraud against

22 the public by intentionally misrepresenting and concealing material information concerning the

23 safety and efficacy of prescription medications, the acts of Defendants, and each of them,

24 described herein constitute unfair or fraudulent business acts or practices.

25    136. Pursuant to California Business & Professions Code section 17203,

26 Plaintiffs seek an Order from this court to provide restitution and to disgorge the monies collected

27 and profits realized by Defendants, and each of them, as a result of their unfair business acts and

28

823343.3         - 35 -

COMPLAINT FOR DAMAGES

1   practices and injunctive relief calling for Defendants, and each of them to immediately and

2   forever cease such unfair business practices.

3                      **TENTH CAUSE OF ACTION**
                              Wrongful Death
4
                          **(Against All Defendants)**
5
6        137.   Plaintiffs incorporate by reference and hereby re-allege paragraphs 1

7   through 136 as though fully set forth here and further allege as follows:

8        138.   As a foreseeable, direct and proximate result of the negligent, tortious or

9   otherwise wrongful conduct of Defendants, and each of them, as hereinbefore set forth, plaintiff

    MAXX WENDELL developed an aggressive and deadly form of cancer to which he ultimately
10
    succumbed.
11
12       139.   The death of plaintiff MAXX WENDELL was a foreseeable, direct and

13  proximate result of the negligent, tortuous or otherwise wrongful conduct of Defendants, and each

    of them, as hereinbefore set forth.
14
                   **PUNITIVE DAMAGES ALLEGATIONS**
15
16                        **(Against All Defendants)**

17       140.   Plaintiffs incorporate by reference and hereby reallege paragraphs 1

18  through 139 as though fully set forth here and further allege as follows:

19       141.   The acts, conduct, and omissions of Defendants, and each of them, were

20  willful and malicious and were done with a conscious disregard for the rights of Plaintiffs and

21  other foreseeable users of the pharmaceutical agents mentioned herein, and for the primary

22  purpose of increasing Defendants' and each of their, profits from the sale and distribution of their

23  drug products.  The outrageous and unconscionable conduct of Defendants, and each of them, as

24  set forth herein, warrants an award of exemplary and punitive damages against Defendants, and

    each of them, in an amount appropriate to punish and make an example of each defendant.
25
26       142.   Prior to the manufacturing, sale and distribution of the aforesaid

27  pharmaceutical drug products Defendants, and each of them, knew that said pharmaceutical drug

28  products were in a defective condition as previously described herein and knew that those who

1   were prescribed and the foreseeable users who took them would experience and did experience

2   severe and permanent physical, mental, and emotional and economic injuries.  Further,

3   Defendants, and each of them, through their officers, directors, managers and agents, had

4   knowledge that their drugs used either singly or in combination in a foreseeable manner,

5   presented a substantial and unreasonable risk of harm to the public, including Plaintiffs and as

6   such, said purchasers and/or consumers of said drugs were unreasonably subjected to risk of

7   permanent injury from the consumption of said drugs.

8           143.    Despite such knowledge, Defendants, and each of them, acting through

9   their officers, directors and managing agents for the purpose of enhancing their profits, knowingly

10  and deliberately failed to remedy the known defects in said drugs and failed to warn any and all

11  persons who prescribed, purchased or consumed Defendants' products, including but not limited

12  to, any and all physicians and foreseeable users of the products, of the extreme and permanent

13  risks associated with the foreseeable uses of their drugs and their defective nature.  Said

14  Defendants, and each of them, as well as their individual agents, officers, and directors

15  intentionally proceeded with the manufacturing, packaging, labeling, distribution, marketing and

16  sale of said drugs knowing that foreseeable users would be exposed to serious potential danger in

17  order to advance Defendants' and each of their, own pecuniary interest and monetary profits.  The

18  conduct of Defendants, and each of them, was despicable, and so contemptuous that it would be

19  looked down upon and despised by ordinary decent people, and carried on by Defendants, and

20  each of them, with willful and conscious disregard for the safety of Plaintiffs entitling Plaintiffs to

21  exemplary damages under Civil Code Section 3294.

22                          **PRAYER FOR DAMAGES**

23          WHEREFORE, Plaintiffs STEPHEN WENDELL, for himself and as personal

24  representative of the ESTATE OF MAXX WENDELL, deceased, and LISA WENDELL, for

25  herself, pray for relief on the entire complaint, as follows:

26          A.      Judgment be entered against all Defendants on all causes of action of this

27  Complaint;

28

823343.3                          - 37 -

      **B.**      Plaintiffs be awarded their full, fair and complete recovery for all claims and causes of action alleged herein;

      **C.**      Plaintiffs be awarded all appropriate costs, attorneys= fees, expenses, and pre judgment and post judgment interest, as authorized by law on the judgments which are entered in Plaintiffs behalf; and,

      **D.**      Such other relief the court deems as just and appropriate.

WHEREFORE, Plaintiffs STEPHEN WENDELL, for himself and as personal representative of the ESTATE OF MAXX WENDELL, deceased, and LISA WENDELL, for herself pray for judgment against the Defendants, and each of them, as follows:

### AS TO THE FIRST CAUSE OF ACTION FOR FRAUD AND DECEIT

1. General damages according to proof at the time of trial;
2. Medical and other special damages, past present and future, according to proof at the time of trial;
3. Loss of earnings and loss of earnings capacity, according to proof at the time of trial;
4. For medical monitoring according to proof;
5. For pre-judgment and post-judgment interest as followed by the laws of the State of California;
6. Costs of suit incurred herein; and
7. For such other and further relief as the court may deem just and proper.

### AS TO THE SECOND CAUSE OF ACTION
### FOR NEGLIGENCE, RECKLESSNESS & GROSS NEGLIGENCE

1. General damages according to proof at the time of trial;
2. Medical and other special damages, past present and future, according to proof at the time of trial;
3. Loss of earnings and loss of earnings capacity, according to proof at the time of trial;
4. For medical monitoring according to proof;

823343.3

- 38 -

COMPLAINT FOR DAMAGES

1    5.    For pre-judgment and post-judgment interest as followed by the laws of the

2  State of California;

3    6.    Costs of suit incurred herein; and

4    7.    For such other and further relief as the court may deem just and proper.

5  ### AS TO THE THIRD CAUSE OF ACTION
6  ### FOR NEGLIGENT MISREPRESENTATION

7    1.    General damages according to proof at the time of trial;

8    2.    Medical and other special damages, past present and future, according to

9  proof at the time of trial;

10    3.    Loss of earnings and loss of earnings capacity, according to proof at the

11  time of trial;

12    4.    For medical monitoring according to proof;

13    5.    For pre-judgment and post-judgment interest as followed by the laws of the

14  State of California;

15    6.    Costs of suit incurred herein; and

16    7.    For such other and further relief as the court may deem just and proper.

17  ### AS TO THE FOURTH CAUSE OF ACTION FOR NEGLIGENCE

18    1.    General damages according to proof at the time of trial;

19    2.    Medical and other special damages, past present and future, according to

20  proof at the time of trial;

21    3.    Loss of earnings and loss of earnings capacity, according to proof at the

22  time of trial;

23    4.    For medical monitoring according to proof;

24    5.    For pre-judgment and post-judgment interest as followed by the laws of the

25  State of California;

26    6.    Costs of suit incurred herein; and

27    7.    For such other and further relief as the court may deem just and proper.

28

823343.3

- 39 -

COMPLAINT FOR DAMAGES

## AS TO THE FIFTH CAUSE OF ACTION FOR NEGLIGENCE *PER SE*

1.    General damages according to proof at the time of trial;

2.    Medical and other special damages, past present and future, according to proof at the time of trial;

3.    Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4.    For medical monitoring according to proof;

5.    For pre-judgment and post-judgment interest as followed by the laws of the State of California;

6.    Costs of suit incurred herein; and

7.    For such other and further relief as the court may deem just and proper.

## AS TO THE SIXTH CAUSE OF ACTION FOR
## STRICT PRODUCT LIABILITY IN TORT (Failure To Warn)

1.    General damages according to proof at the time of trial;

2.    Medical and other special damages, past present and future, according to proof at the time of trial;

3.    Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4.    For medical monitoring according to proof;

5.    For pre-judgment and post-judgment interest as followed by the laws of the State of California;

6.    Punitive damages;

7.    Costs of suit incurred herein; and

8.    For such other and further relief as the court may deem just and proper.

## AS TO THE SEVENTH CAUSE OF ACTION
## FOR BREACH OF IMPLIED WARRANTY

1.    General damages according to proof at the time of trial;

2.      Medical and other special damages, past present and future, according to proof at the time of trial;

3.      Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4.      For medical monitoring according to proof;

5.      For pre-judgment and post-judgment interest as followed by the laws of the State of California;

6.      Costs of suit incurred herein; and

7.      For such other and further relief as the court may deem just and proper.

## AS TO THE EIGHTH CAUSE OF ACTION
## FOR BREACH OF EXPRESS WARRANTY

1.      General damages according to proof at the time of trial;

2.      Medical and other special damages, past present and future, according to proof at the time of trial;

3.      Loss of earnings and loss of earnings capacity, according to proof at the time of trial;

4.      For medical monitoring according to proof;

5.      For pre-judgment and post-judgment interest as followed by the laws of the State of California;

6.      Costs of suit incurred herein; and

7.      For such other and further relief as the court may deem just and proper.

## AS FOR THE NINTH CAUSE OF ACTION FOR
## VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200 *ET SEQ.*

1.      For injunctive relief, forever enjoining Defendants from the acts of unfair competition and untrue and misleading business practices, and ordering Defendants to pay restitution to Plaintiffs, all funds acquired by means of any act or practice declared by this court to be in violation of Business and Professions Code Section 17500, *et seq.*, unlawful or fraudulent, or to constitute unfair competition or untrue or misleading advertising;

2.      For disgorgement of Defendants' profits;

823343.3                           - 41 -
COMPLAINT FOR DAMAGES

3.   For exemplary and punitive damages in an amount to be proven at trial;

4.   For such other and further relief as the Court deems just and proper;

5.   For attorneys costs and fees, according to proof.

**AS TO THE TENTH CAUSE OF ACTION FOR WRONGFUL DEATH**

1.   Wrongful death damages pursuant to the Wrongful Death Act and according to proof at the time of trial;

2.   For pre-judgment and post-judgment interest as followed by the laws of the State of California;

3.   Costs of suit incurred herein; and

4.   For such other and further relief as the court may deem just and proper.

Dated: July 2, 2009                    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


By: _____
        Fabrice Vincent

Fabrice Vincent
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Esther E. Berezofsky
WILLIAMS CUKER BEREZOFSKY
Woodland Falls Corporate Center
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Telephone: (856) 667-0500
Facsimile: (856) 667-5133

Attorneys for Plaintiffs

823343.3

- 42 -

COMPLAINT FOR DAMAGES

**DEMAND FOR JURY TRIAL**

The Plaintiffs STEPHEN WENDELL and LISA WENDELL, for themselves and as successors in interest to MAX WENDELL, deceased, demand a trial by jury on all issues so triable in this civil action.

Dated: July 2, 2009                    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

                                       By:_____
                                              Fabrice Vincent

                                       Fabrice Vincent
                                       LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                       275 Battery Street
                                       San Francisco, CA  94111-3339
                                       Telephone:  (415) 956-1000
                                       Facsimile:  (415) 956-1008

                                       Esther E. Berezofsky
                                       WILLIAMS CUKER BEREZOFSKY
                                       Woodland Falls Corporate Center
                                       210 Lake Drive East, Suite 101
                                       Cherry Hill, NJ 08002
                                       Telephone:  (856) 667-0500
                                       Facsimile:  (856) 667-5133

                                       Attorneys for Plaintiffs

823343.3                          - 43 -
                        COMPLAINT FOR DAMAGES